(No. 33753.— ▮▮▮▮▮)

LESLIE R. WIEDRICH *et al.,* Appellants, *vs.* FRANK HOWARD *et al.,* Appellees.

*Opinion filed January 19, 1956.*

590

Loozɛ and Kinnɛ, of McHenry, for appellants.

Josʟʏɴ, Parker & Kɛʟʟ, of Woodstock, (David R. Josʟʏɴ, and V. E. Kɛʟʟ, of counsel,) for appellees.

Mr. Justice Bristow delivered the opinion of the court:

This is a direct appeal brought by plaintiffs from an order entered in the circuit court of McHenry County dismissing an ejectment action, after granting defendants' motion to find them not guilty at the close of plaintiffs' evidence.

In their complaint, filed August 17, 1953, plaintiffs claim a fee simple title to a strip of land which they allege they acquired by twenty years of adverse possession. Defendants' answer consists of a general denial and claim of ownership of title of record acquired by deed. A freehold

being involved the case comes here directly. *Cienki* v. *Rusnak*, 398 Ill. 77.

This cause was heard by the court without a jury. Plaintiffs contend that their evidence shows that they met all the statutory requirements necessary to vest the fee simple title of the land in question in them, and that the trial court erred in finding defendants not guilty, and they urge this court to reverse the order of dismissal and remand this cause to the trial court with directions to enter an order finding the title to the disputed strip in them. This result could not obtain should we share plaintiffs' view that the trial court erred in granting defendants' motion for a finding in their favor at the close of the plaintiffs' case. There would be a remandment permitting defendants to offer evidence. *Reiter* v. *Illinois National Casualty Co.* 397 Ill. 141.

Plaintiffs are brothers and sisters and the only heirs-at-law of their father, Frank Wiedrich. Frank was the owner of a farm in McHenry County, the northerly boundary line of which is the southerly boundary of defendants' farm. Defendant Frank Howard obtained his farm from Frank Wiedrich's brother, Fred, now deceased. From 1898 to 1933 the two brothers Frank and Fred owned and operated the two farms as tenants in common. On May 6, 1933, Frank and Fred Wiedrich executed and delivered to each other quitclaim deeds which vested the title in the south farm in Frank and the north farm in Fred. The respective properties were described by quarter quarter sections.

It is claimed in this litigation that Frank was in possession of a small piece of land for more than twenty years and that his possession was of such open, adverse, and hostile character that he acquired title thereto. Peter Wiedrich, father of Frank and Fred and grandfather of plaintiffs, owned the two farms and operated them as one. During his lifetime, and as long as anyone can remember, various

fences were erected on the farm, including the one creating the north boundary line of the wedge-shaped strip in controversy. This strip of land lies in the southeast corner of the north farm and is enclosed on the north by a fence commencing at the east boundary line sixteen feet north of the said quarter quarter section line, running thence westerly in a straight line about eighty rods to a point 62 feet north of the quarter quarter section line, and thence south to said line. No fence ran westerly from the center of the farm to the west boundary line thereof. The uncontroverted evidence indicates that the fence on the north was not constructed as a division fence but only for the purpose of separating a grain field from one used for pasture.

After 1933 Frank and Fred farmed more or less separately and independently. They exchanged work, their cattle roamed back and forth on the two properties and there was never any ill feeling between them. If Frank wanted to use some of Fred's pasture or any other part of his premises it was agreeable with Fred and it worked the other way also. Each year from 1933 to November 21, 1951, the day of his death, Frank cultivated the field beyond the quarter quarter section line north to the fence and the plaintiffs continued to do so until May 25, 1953, when the defendant Frank Howard caused the fence to be removed and a new fence built on the quarter quarter section line. Defendants acquired Fred's land by purchase in 1951, and in that year caused a survey thereof to be made and stakes set on the quarter quarter section line in the field. Defendant Frank Howard told plaintiff Leslie Wiedrich that the latter could come in and cut the hay north of where the survey stakes had been put, and at another time told him that he could use the land as long as said defendant owned it. Plaintiffs objected to the stakes and removed them by running machinery over them. Defendants removed the old fence on May 25, 1953, set fence posts on the survey

line and later completed a cyclone and barbed wire fence, which plaintiff Leslie Wiedrich admitted he cut. Plaintiffs did not harvest the crop on the strip in question in 1953.

Defendant Howard is the record title holder to the premises in question, but plaintiffs claim title by reason of adverse possession for more than twenty years by virtue of section 1 of the Limitations Act. (Ill. Rev. Stat. 1953, chap. 83, par. 1.) In order for plaintiffs to prevail under the provisions of that section, the evidence presented by plaintiffs, if taken as true, must constitute the strict, clear and unequivocal proof required to overcome the presumptions in favor of the true owner, namely, that plaintiffs and those under whom they claim have been in hostile, actual, visible, notorious, exclusive, and continuous possession, under claim of ownership inconsistent with the ownership of the holder of record title for twenty years or more.

Defendants argue that plaintiffs' proof completely failed to establish the foregoing. The trial court shared this view, for he entered judgment for defendants at the close of plaintiffs' case. The doctrine of adverse possession is to be taken strictly, and it cannot be made out by implication or inference. The presumptions are all in favor of the true owner, and the proof, in order to overcome such presumptions, must be strict, clear and unequivocal. (*Schwartz v. Piper,* 4 Ill. 2d 488, 492; *Town of Kaneville v. Meredith,* 351 Ill. 620; *Horn v. Metzger,* 234 Ill. 240.) In order to render a possession adverse, it must be hostile in its inception and so continue for the statutory period. (*Turney v. Chamberlain,* 15 Ill. 271, 273; *Town of Kaneville v. Meredith,* 351 Ill. 620.) Possession of a grantor is regarded as subservient to the title of the grantee in the absence of acts manifesting hostility to the grantee and a claim of exclusive ownership. *Rudolph Wurlitzer Co. v. State Bank of Chicago,* 290 Ill. 72, 83; *Peoria and Pekin Union Railway Co. v. Tamplin,* 156 Ill. 285, 298, 299.

Having in mind these principles that must control our

conclusion in this case, we must consider these uncontroverted facts: the deed by which Fred Wiedrich acquired title did not refer to monuments or fences but was by quarter sections and quarter quarter sections; the fence in question was never considered as a division line fence but was constructed solely to facilitate farming and grazing operations; there is a complete lack of evidence as to just when Frank went into possession of this disputed strip, there is a complete lack of any proof that Frank's possession, whenever it began, was of a hostile character; there is no proof that Frank ever claimed to own the land up to the fence but on the contrary his possession was of a permissive character. Plaintiffs admitted on cross-examination that neither Frank, nor any of them, intended to claim any of Fred's property. They only entertained the false impression that Frank's line extended to the fence. Such testimony contradicts the essential ingredients of adverse possession. Not until the defendant Frank Howard caused the survey stakes to be set in the field was there any act of dominion asserted by plaintiffs.

The authorities relied upon by plaintiffs are all easily distinguishable from the case before us, and we find them inapplicable in particular because the parties involved therein lack that grantor-grantee relationship which is present here. Mere possession by a grantor continuing for the prescriptive period is not sufficient to characterize the holding as adverse to the grantee since such possession is presumed to be permissive. The grantor must in some way apprise the grantee of his claim of title, which claim of necessity must be repugnant to the covenants in the deed just delivered. This is especially true where the parties to the conveyance enjoy a close, friendly, family relationship.

In *Tully* v. *Tully*, 137 Cal. 60, 69 Pac. 700, it was held that the grantor who remained in possession of the premises up to the date of his death, and used the same, and paid the taxes thereon, did not divest his grantees of the title con-

veyed by him, the court noting that the conveyance had been made by a father to his sons, and saying that it was incredible that there would have been a hostile intent on the father's part in such a case. Illinois has also recognized this principle, saying in *Kirby* v. *Kirby*, 236 Ill. 255, on page 270: "It may be that the facts proven in this case would warrant the conclusion, as against anybody else than his children who claim the title, that his possession was adverse, but as against his children, who owned the fee subject to his homestead and dower, his possession cannot be held to be adverse."

In view of the foregoing analysis of the evidence and legal principles applicable we are of the opinion that the trial court properly entered judgment for defendants and the same is affirmed.          *Judgment affirmed.*