JOHN L. MORRIS, Plaintiff-Appellant, v. FRANK Z. HUMPHREY *et al.*, Defendants-Appellees.

Third District   No. 3—85—0746

Opinion filed August 12, 1986.

Thomas E. Leiter, of Leiter, Leiter & Sahn, of Peoria, for appellant.

Thomas W. Kehr and Timothy J. Cassidy, both of Kehr, Cassidy & Mueller, of Chillicothe, for appellees.

JUSTICE WOMBACHER delivered the opinion of the court:

This appeal arises from a suit to quiet title to a disputed tract of unimproved real estate located in Peoria County. By affirmative defense, the defendants claimed to have acquired rights to the property through adverse possession. The case was tried without a jury, after which the trial court entered judgment for the defendants, from

which order the plaintiff takes this appeal. We find that the decision of the trial court is against the manifest weight of the evidence and should be reversed.

The plaintiff and defendants (the Humphreys) are the owners of adjoining parcels of land. The dispute centers on the location of a boundary line between the two parcels. The history of the disagreement dates back to 1938, and it is necessary to relate the background in some detail in order to give meaning to the relevant facts of the case.

The disputed area is part of a larger tract to which the plaintiff claims fee-simple title under an agreement for warranty deed dated January 21, 1980, and a subsequent deed of conveyance executed pursuant to such agreement.

The Humphreys acquired title to their land in 1938 by deed from Mrs. Humphrey's mother. Prior to that, Mrs. Humphrey's family had lived on or near the disputed tract since 1916. The boundary line, which the defendants claim marks the disputed edge of their property, is located along a fence line which Mrs. Humphrey testified was in place from at least 1916 to 1955.

In 1955 Edwin Dunbar, a predecessor in title to the plaintiff whose interest dated back to 1947, removed the fence. The Humphreys neither demanded an explanation nor replaced the fence until 1973. No conversation concerning Dunbar's reason for removing the fence ever took place. In the meantime, the Humphreys continued farming the disputed tract as they had since 1939 or 1940 (by arrangement with tenant farmers), except that in the absence of the fence they farmed up to the "crop line" which had developed along the former fence line. The plaintiff's land to the east of that line was uncultivated, both before and since 1955.

In September 1973 the defendants erected a new fence on the original fence line. Edwin Dunbar, through his attorney, sent the Humphreys a letter dated April 3, 1974, demanding the removal of the fence. When the defendants failed to take any action in response to the letter, Dunbar removed the fence, sold the fence poles, and destroyed the Humphreys' crop by mowing it at midnight. Around the same time, he placed his own stakes along his claimed boundary line, approximately 80 feet west of the former fence line.

Mrs. Humphrey confronted Dunbar and asked him why he was doing this and Mr. Dunbar replied, "Because this property belongs to me." The Humphreys did not again erect a fence until about 1980, after the plaintiff took title to the property. On erection of the new fence the present litigation commenced.

■ Initially, we note that it is uncontroverted that the plaintiff is the record titleholder of the disputed property. The defendants, claiming title under the doctrine of adverse possession, have the burden of proof, and all presumptions are in favor of the record titleholder. (*Cagle v. Valter* (1960), 20 Ill. 2d 589, 170 N.E.2d 593.) Proof, in order to overcome such presumptions, must be clear and unequivocal, and cannot be made by implication or inference. *Tapley v. Peterson* (1986), 141 Ill. App. 3d 401, 489 N.E.2d 1170.

The trial court found that the defendants had, since October 1, 1938 (the date on which they acquired title from Mrs. Humphrey's mother), "continuously and uninterruptedly" maintained adverse possession of the disputed premises.

■ The plaintiff argues that the defendants failed to meet their burden of proof as to their affirmative defense by establishing the concurrence of the requisite five elements over a period of 20 years (Ill. Rev. Stat. 1983, ch. 110, par. 13—101). To establish title, the possession must be (1) continuous; (2) hostile or adverse; (3) actual; (4) open, notorious and exclusive; and (5) under claim of title inconsistent with that of the true owner. *Joiner v. Janssen* (1980), 84 Ill. App. 3d 462, 405 N.E.2d 835, *rev'd on other grounds* (1980), 85 Ill. 2d 74, 421 N.E.2d 170.

The plaintiff challenges the trial court's findings that the defendants' possession was continuous and uninterrupted for the full statutory period of 20 years, that the possession was hostile and that it was exclusive. A review of the evidence reveals that the trial court erred.

The single most significant incident in the entire chain of events occurred in 1955, when Dunbar removed the fence. Since this event took place less than 20 years after the Humphreys' claim of possession began in 1938, the plaintiff asserts that it interrupted the limitation period. We agree.

The defendants contend that notwithstanding the absence of the fence from 1955 to 1973 their continued farming activity was sufficient to establish their possessory claim. Evidently, the trial judge agreed with them. We find, however, that this conclusion is contrary to the manifest weight of the evidence.

■ The determinative issue is whether the proof of farming activity alone, after the removal of the fence in 1955, was sufficient to sustain the defendants' claim. We find that it was not. The use of vacant and unenclosed land is presumed to be permissive and not adverse. (*Light v. Steward* (1984), 128 Ill. App. 3d 587, 470 N.E.2d 1180.) Mere permission to use land cannot ripen into a prescriptive or ad-

verse possessory right regardless of the time such permissive use is enjoyed. See *O'Hara v. Chicago Title & Trust Co.* (1938), 115 Ill. App. 3d 309, 450 N.E.2d 1183.

The defendants cite cases from other jurisdictions, urging us to adopt the position that Dunbar's failure to object to the Humphreys' farming operation was not the same as granting permission, but should instead be construed as "implied acquiescence," which is insufficient to defeat a claim of adverse possession. *Monaco v. Bennion* (1978), 99 Idaho 529, 585 P.2d 608; *Ehle v. Prosser* (1972), 293 Minn. 183, 197 N.W.2d 458; *Cremer v. Cremer Rodeo Land & Livestock Co.* (1981), ___ Mont. ___, 627 P.2d 1199.

■ The defendants further submit that this interpretation coincides with the rule of law in Illinois that the focus in determining whether or not possession is adverse is the state of mind of the possessor. (*Schertz v. Rundles* (1977), 48 Ill. App. 3d 672, 363 N.E.2d 203.) They argue that the defendants believed that they owned the disputed property, and since Dunbar's silence with respect to their farming gave them no reason to doubt that belief, Dunbar's failure to object should not be construed in the plaintiff's favor.

We cannot agree that the evidence of defendants' state of mind is strong enough to override the presumption that their use of Dunbar's unenclosed land was permissive. In fact, we find that the evidence is quite strong that the defendants were well aware of Dunbar's objection to their claim of ownership, if not their farming, and that they acted in a manner which was inconsistent with a belief that they owned the property.

Although Dunbar never expressed in words his reasons for removing the defendants' fence in 1955, his actions were far more expressive of his purpose than mere words could have been. By doing what he did in 1955, he claimed dominion and control over the fence and the land, manifesting that he had the right to do so. We find it most difficult to believe that the defendants could have mistaken his intentions.

The Humphreys' lack of response to Dunbar's actions was inconsistent with the elements of hostility and exclusivity. Hostility of possession requires an intent to claim the fee as against the true owner and all others, and one's claim to the fee is demonstrated by using and controlling the land as an owner. (*Joiner v. Janssen* (1980), 84 Ill. App. 3d 462, 405 N.E.2d 835, *rev'd on other grounds* (1980), 85 Ill. 2d 74, 421 N.E.2d 170.) Exclusivity requires that the rightful owner be altogether deprived of possession. See *Towle v. Quante* (1910), 246 Ill. 568, 92 N.E. 967; *Hartzler v. Uftring* (1983), 114 Ill. App. 3d 433,

451 N.E.2d 1.

The defendants made no effort to control the land as owners, but passively allowed Dunbar to assert dominion over the land which they claim to have believed belonged to them. Contrary to their professed state of mind, their behavior strikes us to be that of people who suspected that they were in the wrong and wanted to keep quiet so they could continue to farm the disputed land.

This impression is not alleviated by Mrs. Humphrey's testimony that their inaction in 1955 was due to the fact that her mother had been a good friend of the Dunbars and they did not wish to upset her. The failure to assert a claim of right to property out of a desire to avoid trouble is clearly an inadequate explanation which gives rise to the presumption of an awareness on the part of the adverse possessor that the plaintiff claims title and ownership. (*Isham v. Cudlip* (1962), 33 Ill. App. 2d 254.) This conflicts sharply with the requirement that one claiming adverse possession of the disputed property act without recognition of the superior title in a true owner. *Baumann v. Lawndale National Bank* (1977), 45 Ill. App. 3d 328, 359 N.E.2d 1086.

Moreover, it was not until 1973, 11 years after the death of Mrs. Humphrey's mother in 1962, that the defendants rebuilt the fence. Then, after receiving the letter from Dunbar's attorney demanding the fence's removal, they said and did nothing in response. Finally, after Dunbar tore down the fence and sold it, destroyed their crops and set out his own stakes, Mrs. Humphrey asked him why he did it. He told her, "[T]his property belongs to me." Again, the defendants remained passive for nearly six years before erecting a fence—after Dunbar's death and the plaintiff's recent acquisition of the property.

From their brief on appeal, the defendants would have us believe that Dunbar's statement in 1974 that he owned the land was the first inkling that the Humphreys had that their claim of possession was disputed. Yet, in Mrs. Humphrey's own words, referring to Dunbar's destruction of their crops in 1974, "He had never objected to anyone farming it [before]. He just objected to the thing that we said it was ours."

This statement and the other evidence of record convince us that the trial court erred in granting judgment in the defendants' favor. Clearly, the defendants realized that Dunbar's actions in 1955 and again in 1974 were a challenge to their claim of title. Knowing this, they nevertheless failed to act so as to unequivocally assert ownership. Therefore, the proof falls far short of overcoming the presumption in favor of the record titleholder that the use of the disputed land by the defendants was permissive, rather than adverse.

In view of our decision reversing the judgment for the defendants, we need not consider the issue plaintiff raises concerning the defendants' alleged failure to establish with reasonable certainty the location of the boundaries of the tract to which they claim adverse possession.

Reversed.

SCOTT, P.J., and BARRY, J., concur.