CHICAGO STEEL RULE DIE AND FABRICATORS COMPANY, Plaintiff-Appellant, v. MALAN CONSTRUCTION COMPANY *et al.*, Defendants-Appellees.

First District (3rd Division) No. 1—89—1925

Opinion filed June 27, 1990.

702

Robert S. Minetz, of Cowan & Minetz, of Chicago, for appellant.

Samuel V.P. Banks and Daniel J. Pierce, both of Chicago, for appellee Malan Construction Company.

Dennis A. Marks and Eric L. Samore, both of Querrey & Harrow, Ltd., of Chicago, for appellees La Salle National Bank and American National Bank and Trust Company.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Chicago Steel Rule Die & Fabricators Company, is the owner and operator of a manufacturing facility on the property commonly known as 6630 West Wrightwood in Chicago. Adjacent to the east line of the plaintiff's property are certain railroad tracks. Immediately to the east of the railroad tracks is property which is currently owned by defendants La Salle National Bank and American National Bank and Trust Company. Defendant Malan Construction Company has performed certain construction work on the property, developing the land with a shopping center.

Plaintiff alleges that in 1965 and 1966, it constructed a second building on its property. The building was ready for occupancy on or about September 1, 1966. Prior to the construction of the second building, Carey Brickyard was a business which was situated on defendants' parcel of land. At that time, there was a 29-foot dirt and gravel road located along the western edge of defendants' parcel and along the eastern edge of the railroad tracks between plaintiff's parcel and the intersection of Fullerton and Grand Avenues. The dirt road was subsequently paved with asphalt when another business, Jacobs Buick, began its operation on the Carey Brickyard premises in the 1970's. The 29-foot roadway is the subject of this dispute.

Plaintiff alleges that it had continuous and uninterrupted use of the 29-foot roadway until 1987 and 1988, when defendants obstructed the roadway by constructing a curb. The construction has impeded plaintiff's use of the easement and blocked the direct access to Fullerton and Grand Avenues. Defendants state that access to plaintiff's facility may be had from Normandy Avenue, which runs parallel to the 29-foot roadway. At oral argument, plaintiff stated that it was not landlocked as a result of the interrupted use of the roadway.

In its two-count amended complaint, plaintiff sought a declaratory

judgment that it had a prescriptive easement over defendants' property (count I), and requested a mandatory injunction directing defendants to remove any obstructions which prevented its use of the roadway, restore the parcel to its original condition and enjoin them from constructing any future obstructions (count II).

Defendants filed motions to dismiss plaintiff's complaint pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, pars. 2—615, 2—619). The trial court granted defendant's motions, dismissing the complaint, and this appeal followed. We affirm.

HISTORY

In 1982, the City of Chicago filed its petition to condemn three parcels, designated 2, 3, and 4, in the circuit court of Cook County, under cause numbers 82—L—3773 and 82—L—3777. The petitions sought an order vesting the city with fee simple title to these parcels, free and clear of all claims and easements. Parcels 2, 3, and 4 overlapped and included the 29-foot roadway along the eastern edge of the railroad tracks described in Chicago Steel's amended complaint. Each petition expressly named as defendants "unknown owners" who may have some right or claim in a portion of the parcels, but whose names were unknown and upon due and diligent inquiry could not be ascertained.

Pursuant to the Fullerton-Grand Blighted Commercial Area Project, on June 10, 1982, the court entered an order vesting the city with fee simple absolute title to parcels 2 and 3, and in November 1982 title was granted on parcel 4. Neither order was made subject to the purported prescriptive easement rights of plaintiff. The City of Chicago conveyed the parcels to Malan Construction Company (through American National Bank and Trust Company of Chicago under trust No. 66687).

OPINION

Plaintiff first contends that defendants' section 2—615 motion should not have been granted. It maintains that the complaint was sufficient, as a matter of law, to state a claim for a finding of a prescriptive easement.

■ The granting of a motion to dismiss is within the sound discretion of the trial court. (*Harvey v. Mackay* (1982), 109 Ill. App. 3d 582, 586, 440 N.E.2d 1022.) In determining whether to grant or deny a section 2—615 motion, a court must consider the legal sufficiency of the complaint based only on the allegations stated therein. (*Goldstein*

*v. Lustig* (1987), 154 Ill. App. 3d 595, 598, 507 N.E.2d 164.) However, any exhibits attached to the complaint become a part thereof. *Goldstein*, 154 Ill. App. 3d at 598.

A motion to dismiss admits all well-pleaded facts and reasonable inferences that can be drawn therefrom. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426, 430 N.E.2d 976; *American International Hospital v. Chicago Tribune Co.* (1985), 136 Ill. App. 3d 1019, 483 N.E.2d 965.) A cause of action should not be dismissed on the pleadings unless it plainly appears that no set of facts could be proved which would entitle the plaintiff to recover. (*Thrall Car Manufacturing Co. v. Lindquist* (1986), 145 Ill. App. 3d 712, 716, 495 N.E.2d 1132.) "[I]f a motion to dismiss admits only facts well pleaded and not conclusions, then, in considering the motion, if after deleting the conclusions that are pleaded there are not sufficient allegations of fact which state a cause of action against the defendant, the motion must be granted regardless of how many conclusions the count may contain and regardless of whether or not they inform the defendant in a general way of the nature of the claim against him." *Knox College v. Celotex Corp.*, 88 Ill. 2d at 426.

■ The purpose of pleadings is to present, define and narrow the issues and limit the proof necessary at trial. (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 307, 430 N.E.2d 1005.) Notice pleading is insufficient under our practice act (*Northrop Corp. v. Crouch-Walker, Inc.* (1988), 175 Ill. App. 3d 203, 211, 529 N.E.2d 784), and even though section 2—603 (Ill. Rev. Stat. 1987, ch. 110, par. 2—603), formerly section 33(3) (Ill. Rev. Stat. 1979, ch. 110, par. 33(3)), of our Code of Civil Procedure contains provisions concerning liberal construction, such provisions do not remedy the failure of a complaint to state a cause of action (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 17, 440 N.E.2d 96). While plaintiffs are not required to plead their evidence, their complaint should contain sufficient material allegations of ultimate facts. *Reel v. City of Freeport* (1965), 61 Ill. App. 2d 448, 454, 209 N.E.2d 675.

■ The question before us is whether the complaint here properly alleged sufficient facts to defeat defendants' section 2—615 motion. In order to determine the sufficiency of plaintiff's pleadings, we must first consider the elements necessary to plead a claim for a prescriptive easement. In essence, to establish an easement by prescription, the use must be of such character as is required to establish title to land in fee by adverse possession. (*Rita Sales Corp. v. Bartlett* (1970), 129 Ill. App. 2d 45, 51-52, 263 N.E.2d 356.) Thus, in order to claim a prescriptive right, the use must have been hostile or adverse, uninter-

rupted, exclusive, continuous and under a claim or title inconsistent with that of the true owner. (*Petersen v. Corrubia* (1961), 21 Ill. 2d 525, 531, 173 N.E.2d 499.) These elements must have shared a concurrent existence for a period of 20 years. Ill. Rev. Stat. 1987, ch. 110, par. 13—101; *Joiner v. Janssen* (1981), 85 Ill. 2d 74, 82, 421 N.E.2d 170.

In its complaint, plaintiff first alleged that in 1965 and 1966 it constructed a second building on its parcel of property; that the dirt-gravel road was subsequently paved when Jacobs Buick began its operation on the brickyard premises in 1970; that during the "1960's, during the construction of its second building, construction workers used the road," as did agents, employees, suppliers and customers of plaintiff; and that the travel included both automobile and truck travel. Plaintiff then concluded that the use was open, visible and notorious.

We do not take issue with the sufficiency of these allegations. However, we find the remainder of plaintiff's pleadings to be largely conclusory and lacking sufficient allegations of fact to support its claim.

Specifically, plaintiff next alleged that the use continued, uninterrupted until defendant obstructed the roadway during its construction in 1987 and 1988; that plaintiff has used the property "with actual and constructive knowledge and acquiescence of defendants and the previous owners," without their express permission, and that their use was not based on any other party's right to use the roadway. Plaintiff then concluded that the use has been adverse, exclusive, continuous and under claim of right.

■ First, there are no facts pleaded wherein plaintiff alleges that it claimed title as against the true owner for the 20-year period. "Hostility of possession requires an intent to claim the fee as against the true owner and all others, and one's claim to the fee is demonstrated by using and controlling the land as an owner." (*Morris v. Humphrey* (1986), 146 Ill. App. 3d 612, 616, 496 N.E.2d 1209.) The claim must be hostile from its inception and continue for the statutory period. *Wiedrich v. Howard* (1956), 7 Ill. 2d 589, 593, 131 N.E.2d 508.

Here, the fact in the pleadings, which alleged that in 1970, someone, not plaintiff, paved the roadway, is evidence that the true owner had control and dominion over the roadway, and this conduct should have put plaintiff on notice of such. Further, there are no allegations in the pleadings that plaintiff made any protests or complaints that the pavers were trespassing or interfering with plaintiff's use of the

roadway. Nor is there any allegation that plaintiff bore the costs of paving the roadway or in any way contributed to its maintenance. We believe that these facts are inconsistent with a claim of ownership.

■ Secondly, plaintiff's statement that its use was not based on any other party's right is not sufficient to demonstrate the exclusivity element. To establish exclusivity, it is unnecessary to show that only the claimant has made use of the way, because exclusive use means that the claimant's right to use the lane does not depend upon a like right in others. (*Light v. Steward* (1984), 128 Ill. App. 3d 587, 594, 470 N.E.2d 1180.) However, exclusivity does require that the rightful owner be altogether deprived of possession. (*Morris*, 146 Ill. App. 3d at 612.) "A joint possession by two, even though the claim of each is adverse to the other, will not be a disseizin *** unless the rightful owner is altogether deprived of possession." (*Towle v. Quante* (1910), 246 Ill. 568, 576, 92 N.E. 967.) Here, there is no allegation that the true owners were deprived of use or possession of the roadway.

■ Moreover, plaintiff's allegations do not support a conclusion that its use was continuous. For a use to be continuous it is imperative that there be no break in the claimant's attitude of mind which would amount to a recognition of subordination to the servient owner's consent. (*Roller v. Logan Landfill, Inc.* (1974), 16 Ill. App. 3d 1046, 1052, 307 N.E.2d 424.) In this case, when the road was paved, we believe that plaintiff was alerted of its subordinate right, thus defeating any claim of continuous use.

■ Finally, there was no allegation that plaintiff ever used the roadway under a claim of right inconsistent with that of defendants. The pleadings do not evidence any conversation or conduct which occurred when plaintiff began using the roadway in the 1960's which disclaimed the true owner's title. Absent any facts which would demonstrate that plaintiff claimed such a right, this element was not sufficiently pleaded.

Plaintiff's allegations that defendants acquiesced in plaintiff's use and never gave express permission are insufficient to defeat a finding of permissive use. Every presumption is in favor of the record titleholder (*Perivoliotis v. Pierson* (1988), 167 Ill. App. 3d 259, 263, 521 N.E.2d 254), and the use of vacant and unenclosed land is presumed to be permissive and not adverse. (*Light*, 128 Ill. App. 3d 587, 470 N.E.2d 1180.) Mere permission to use the property cannot ripen into a prescriptive or adverse possessory right regardless of the time such permissive use is enjoyed. (*Morris v. Humphrey* (1986), 146 Ill. App. 3d 612, 615-16, 496 N.E.2d 1209.) As was stated in *Waller v. Hildebrecht* (1920), 295 Ill. 116, 124, 128 N.E. 807:

"The use of a way without objection or hindrance is not inconsistent with use by permission. [Citations.] It is a matter of common observation that the public makes use of any open, uninclosed space which affords a more convenient way of reaching any given place than the regular way would, and it would be contrary to established legal principles, and to natural justice as well, to allow the public, under such circumstances and by the mere acquiescence of the owner, to acquire the permanent right of way."

We find that the amended complaint as a whole fails to allege sufficient facts to state a cause of action for the declaration of a prescriptive easement. Accordingly, we conclude that the trial court did not err in dismissing it. Moreover, even had the complaint not been dismissed under section 2—615, it could not have survived defendants' section 2—619 motion.

■ The purpose of a section 2—619 motion is to provide a mechanism to dispose of issues of law or easily proved issues of fact. (*Consumer Electric Co. v. Cobelcomex, Inc.* (1986), 149 Ill. App. 3d 699, 703, 501 N.E.2d 156.) It may be granted where the claim asserted against the defendant is barred by other affirmative matter defeating the claim. However, if it cannot be determined with reasonable certainty that the alleged defense exists, the motion should be disallowed. (*Dangeles v. Marcus* (1978), 57 Ill. App. 3d 662, 667, 373 N.E.2d 645.) The court may, in its discretion, decide questions of fact "upon the hearing of the motion." (*North Park Bus Service, Inc. v. Pastor* (1976), 39 Ill. App. 3d 406, 349 N.E.2d 664.) However, in deciding the merits of the motion, a trial court cannot determine disputed factual issues solely upon affidavits and counteraffidavits. *Premier Electrical Construction Co. v. La Salle National Bank* (1984), 132 Ill. App. 3d 485, 477 N.E.2d 1249.

Plaintiff contends that its complaint should not have been dismissed on defendants' section 2—619 motion, and it urges three arguments in support thereof.

■ First, plaintiff argues that its complaint was not barred by the condemnation judgments because it was not a party to the proceeding. Plaintiff argues that even though the city served notice on "unknown owners" (Ill. Rev. Stat. 1987, ch. 110, par. 2—413), since plaintiff was a known owner, it should have been personally served as a defendant in the case. Plaintiff concludes that since it was not served, the court lacked jurisdiction to adjudicate its interest in the property.

In its pleadings plaintiff alleged, generally, that use of the road

commenced in the 1960's, and specifically, that use occurred before and after 1965. At oral argument, plaintiff stated that at the time of the city's condemnation action, plaintiff had been using the roadway for 17 years. The condemnation proceeding occurred in 1982.

As additional support for its argument, plaintiff directs our attention to an affidavit submitted by Gerald Guanci. According to Guanci, in 1982 many of plaintiff's employees traveled on the roadway and anyone viewing the property in the morning or afternoon would have seen about 50 cars. Based on this fact, plaintiff argues that defendants were required to inquire of plaintiff's interest in the property. Plaintiff then asserts, quoting *Dana Point Condominium Association, Inc. v. Keystone Service Co.* (1986), 141 Ill. App. 3d 916, 922, 491 N.E.2d 63, that a "prospective purchaser is charged with constructive notice of all facts which a reasonable inquiry would have disclosed."

Proof of adverse possession must be strict, clear, positive and unequivocal, and cannot be made by implication or inference. (*Cagle v. Valter* (1960), 20 Ill. 2d 589, 592, 170 N.E.2d 593; *Tapley v. Peterson* (1986), 141 Ill. App. 3d 401, 405, 489 N.E.2d 1170.) In order to have acquired a prescriptive easement, and be entitled to notice of the condemnation proceedings as a known owner, plaintiff needed to have been in possession of the easement since 1962. Plaintiff's allegation of use in the 1960's, and more specifically for 17 years, is insufficient to establish the 20-year statutory requirement.

Based on the undisputed allegations in plaintiff's complaint the court could determine that plaintiff had not acquired an interest in the property by the time of the 1982 condemnation proceeding. Having acquired no interest, plaintiff was neither a known nor an unknown owner. Thus, it was not entitled to notice. Further, rehearing of the condemnation proceeding is barred by the doctrine of *res judicata*.

■ Plaintiff next argues that even though it had only used the roadway for 17 years by the time of the condemnation proceeding, the prescriptive period continued to run. According to plaintiff, the city's acquisition of the property after the condemnation proceeding did not toll the running of the statute for the 20-year period. Plaintiff does concede the established rule that the statute of limitations does not run against a municipal corporation in respect to property held for a public use. (See *Zemple v. Butler* (1959), 17 Ill. 2d 434, 438, 161 N.E.2d 818; *Phillips v. Leininger* (1917), 280 Ill. 132, 117 N.E. 497; *People ex rel. Kenney v. City of Goreville* (1987), 154 Ill. App. 3d 1091, 507 N.E.2d 1247.) Notwithstanding that, plaintiff maintains, since this property was held for a private shopping center, the rule

does not apply, and the period continued to run.

Plaintiff cannot prevail on this argument. True, the acquisition of land by eminent domain proceedings must be for a public purpose, and land cannot be condemned for private use. However, it does not follow that because the land may subsequently be sold to a private developer its taking and clearance cannot have been for a public purpose. (*City of Chicago v. Barnes* (1964), 30 Ill. 2d 255, 257, 195 N.E.2d 629.) Moreover, condemnation powers are properly exercised if the express use is for a public purpose even though the ultimate use has not as yet been determined at the time of condemnation. *Barnes*, 30 Ill. 2d at 257.

In *City of Chicago v. American National Bank & Trust Co.* (1986), 146 Ill. App. 3d 784, 786, 497 N.E.2d 413, the city, as part of the South Loop Redevelopment Project, began condemnation proceedings and acquired title to the block that included property owned by the defendant. The complaint alleged that the property was being condemned as part of the South Loop Redevelopment Project, an endeavor necessitated by the public interest. The defendant argued that the condemnation proceeding was void because the city failed to make a *prima facie* case that the public necessity required that it take the defendant's property. (146 Ill. App. 3d at 787.) The reviewing court held that, in the absence of a traverse, the city was not obligated to show that it was acquiring the defendant's property for a valid public purpose; however, it had done so. (146 Ill. App. 3d at 788.) The court held that the taking for redevelopment purposes was not an abuse of the city's power. 146 Ill. App. 3d at 789.

We have reviewed a copy of the city's condemnation petition, included as part of defendants' brief. Therein, the city alleged that the Commercial District Development Commission designated the subject property as a "blighted commercial area," which because of, *inter alia*, dilapidation, failure to produce a proper share of tax revenues, or provide employment commensurate with the capacity of the area, was detrimental to the public safety, health, morals, welfare, and economic stability. We believe that the city properly exercised its right to take the property to serve the public interest, and any rights to the easement were interrupted by the condemnation proceedings. Further, where the continuity of adverse use is interrupted before the elapse of the statutory period, the benefit of the prior adverse use is lost and the adverse claimant must commence again. *Yunkes v. Webb* (1930), 339 Ill. 22, 26, 170 N.E. 709.

Plaintiff cites to *Phillips v. Leininger* (1917), 280 Ill. 132, 117 N.E.2d 497, as support for the proposition that where the public has

no interest in the land in question the period of time necessary to acquire a prescriptive easement continues to run during the time the property is held by the county. Plaintiff's reliance is misplaced.

In *Phillips*, the commissioners of highways in Norwood Park claimed a prescriptive easement in a highway which had been laid out across hospital grounds. (280 Ill. at 133-34.) The highway had always been maintained, graded, improved, managed and controlled by the highway commissioners of the town of Norwood Park, and any work done or improvements made had been paid for with the funds of Norwood Park. (280 Ill. at 134.) The State Board of Administration, which was in charge of the hospital, obstructed use of the highway by placing gates across it. 280 Ill. at 134.

The Board argued that the public could not acquire a prescriptive right to the highway because the limitations statute did not run against the State, which acquired ownership from the county. (280 Ill. at 134-35.) The court distinguished this case from those wherein the property involved is held in trust for a particular use for the benefit of the general public. The court stated that where the property is held by a municipality for the special benefit of the inhabitants of that particular municipality, the rule has no applicability. Since the public in general had no interest in common with the people of Norwood Park, the county was subject to the limitations laws. (280 Ill. at 136.) The statute of limitations extends only to matters affecting public rights as distinguished from private and local rights. 280 Ill. at 135.

Here, there is no evidence that the city took the property for the special benefits of its inhabitants in particular. Rather, the public in general has an interest in common with the people of the city concerning this property. Thus, having held the property for the benefit of the public in general, the city was not subject to the limitation laws.

■■■ Plaintiff's third argument is that neither the city nor the present owners acquired title to the property clear of plaintiff's right. Defendants respond that any prescriptive interest which plaintiff might have had was terminated by the city's taking of the servient tenement. Defendants rely on section 507 of the Restatement of Property, which provides:

> "An easement is extinguished by a taking of eminent domain of the servient tenement, or of an interest therein, to the extent to which the taking permits a use inconsistent with the continuance of the use authorized by the easement." Restatement of Property §507, at 3092 (1944).

Defendants have cited to no Illinois cases on this issue, and our

research has revealed none. However, we note that other jurisdictions have adopted the restatement approach. See *Hartford National Bank & Trust Co. v. Redevelopment Agency of City of Bristol* (1973), 164 Conn. 337, 321 A.2d 469; *Burnquist v. Cook* (1945), 220 Minn. 48, 19 N.W.2d 394; *Curtis v. Redevelopment Authority of City of Philadelphia* (1978), 482 Pa. 58, 393 A.2d 377; *Houston v. McCarthy* (Tex. Civ. App. 1971), 464 S.W.2d 381.

Here, the city acquired the servient estate and, according to plaintiff, there is now construction of a shopping center on the property. Plaintiff's continued use of the roadway is inconsistent with the defendants' planned use for the property. Thus, under the Restatement approach, which we adopt, the easement is extinguished.

 Plaintiff's third and final contention on appeal is that the section 2—619 motion should have been denied because there was a disputed question of fact as to whether the city conducted a diligent inquiry before utilizing service by publication. Plaintiff maintains that an evidentiary hearing was required. Since we have determined that plaintiff acquired no interest in the property by the time of the condemnation proceeding, and that it was not entitled to notice as a known owner, it is irrelevant whether the city exercised diligence in inquiry before utilizing service by publication.

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

CERDA, P.J., and WHITE, J., concur.