578 N.E.2d 1134 (1991)
218 Ill. App.3d 875
161 Ill.Dec. 488
Mae J. NAGY, Victor P. Nagy and Victor P. Nagy, Inc., a corporation, Plaintiffs-Appellants,
v.
James E. BECKLEY and James E. Beckley & Associates, P.C., a corporation, Defendants-Appellees.
No. 1-90-0268.
Appellate Court of Illinois, First District, First Division.
August 26, 1991.
*1135 Collins & Bargione, Chicago (George B. Collins, Christopher Bargione and Gregory A. Bedell, of counsel), for plaintiffs-appellants.
Williams & Montgomery, Ltd., Chicago (Barry L. Kroll, David E. Morgans, Steven J. Rizzi and Lloyd E. Williams, Jr., of counsel), for defendants-appellees.
Justice CAMPBELL delivered the opinion of the court:
Plaintiffs Mae Nagy, Victor Nagy and Victor P. Nagy, Inc. appeal an order of the circuit court of Cook County dismissing counts II, III & IV of their complaint against defendants James E. Beckley and James E. Beckley & Associates, P.C.
The record on appeal discloses the following. Plaintiffs Mae and Victor Nagy are married residents of Michigan. Mae and Victor are also the shareholders, officers and directors of plaintiff Victor P. Nagy, Inc. ("the corporation").
In 1971, Victor signed a franchise agreement with the Comprehensive Accounting Corporation ("CAC"), permitting the corporation to render bookkeeping services in Michigan. Mae did not sign the agreement. Under the agreement, the corporation provided services to accounts it purchased from CAC. The corporation financed these purchases through CAC, as well as signing pledges and loan agreements with CAC. Later, Victor and Mae signed 41 installment notes and security guarantees, both as individuals and as officers and shareholders of the corporation.
In 1983, CAC filed a suit ("the CAC litigation") against plaintiffs arising from contractual disputes between the parties. Plaintiffs retained defendants as counsel to defend them.
The first trial on the merits was declared a mistrial due to the death of the judge. At the second trial, defendants asserted the defense of fraud on behalf of plaintiffs. After the close of proofs, defendants moved to conform the pleadings to the proof and argued that the agreement was unconscionable. In February 1987, the trial court in the CAC litigation entered a judgment against plaintiffs in the amount of $440,268.23, which was affirmed on appeal.[1] Mae then agreed to pay CAC $150,000. Defendants received $102,881.44 for their legal services.
Plaintiffs subsequently filed a four-count complaint against defendants alleging legal malpractice. Count I, brought solely by Mae, alleged defendants neither asserted the defense that Mae never signed the franchise agreement nor told her that the availability of this defense might place her in an adverse position to the other plaintiffs. Count II, also brought solely by Mae, alleged that defendants breached their ethical duty to inform Mae of any potential conflict she might have with the other plaintiffs. Count III, brought by all plaintiffs, alleged defendants' failure to assert illegality as a defense. Count IV, also brought by all plaintiffs, alleged defendants' *1136 failure to assert the unconscionability defense before the close of proofs.
Defendants moved to dismiss the complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure (Ill.Rev.Stat. 1987, ch. 110, par. 2-619). In December 1989, the trial court dismissed counts II, III and IV; plaintiffs now appeal.
The purpose of a section 2-619 motion is to provide a mechanism to dispose of issues of law or easily proved issues of fact. (Chicago Steel Rule Die & Fabricators Co. v. Malan Construction Co. (1990), 200 Ill. App.3d 701, 146 Ill.Dec. 378, 558 N.E.2d 341; Consumer Electric Co. v. Cobelcomex, Inc. (1986), 149 Ill.App.3d 699, 103 Ill.Dec. 135, 501 N.E.2d 156.) A trial court should grant a motion to dismiss if after construing the documents in the light most favorable to the non-moving party, the court finds no disputed issue of fact. (Samansky v. Rush-Presbyterian-Saint Luke's Medical Center (1990), 208 Ill. App.3d 377, 153 Ill.Dec. 428, 567 N.E.2d 386.) The court assumes that the well-pleaded facts of plaintiffs' complaint are true, but conclusions of law or fact unsupported by specific factual allegations may be disregarded. (Foreman v. Consolidated Rail Corp. (1991), 214 Ill.App.3d 700, 158 Ill.Dec. 384, 574 N.E.2d 178.) We may affirm a dismissal granted pursuant to section 2-619 on any grounds supported by the record, regardless of the trial court's reasons. See Beckman v. Freeman United Coal Mining Co. (1988), 123 Ill.2d 281, 286, 122 Ill.Dec. 805, 807, 527 N.E.2d 303, 305.

I.
Mae initially contends that the trial court erred in dismissing count II of plaintiffs' complaint as duplicative of count I. A duplicative count may be properly dismissed. See e.g., Hoth v. Stogsdill (1991), 210 Ill.App.3d 659, 663, 155 Ill.Dec. 34, 37, 569 N.E.2d 34, 37; Ill.Rev.Stat.1987, ch. 110, par. 2-619(a)(3), (9).
In this case, count I alleged that defendants negligently failed to raise the fact that Mae never signed the franchise agreement as a defense and negligently failed to tell Mae that this fact might place her in an adverse position to Victor and the corporation, who lacked this possible defense. The record shows that count II contains substantially the same allegations, but adds allegations that these failures violated duties arising under Canon 5 of the Illinois Code of Professional Responsibility, including Rule 5-105 (107 Ill.2d R. 5-105 (repealed and superseded by new rules effective August 1, 1990); see 134 Ill.2d R. 1.7), which prohibited attorneys from representing multiple clients where the representation was likely to adversely affect the exercise of the attorney's independent judgment, unless the clients consented after receiving full disclosure of the relevant facts from the attorney. Mae argues that this rule gives rise to a duty separate from the duty alleged in count I.
What little authority there is on the subject in this jurisdiction suggests that the rules of legal ethics do not establish a separate duty or cause of action. (See Suppressed v. Suppressed (1990), 206 Ill. App.3d 918, 151 Ill.Dec. 830, 565 N.E.2d 101; Berlin v. Nathan (1978), 64 Ill.App.3d 940, 21 Ill.Dec. 682, 381 N.E.2d 1367; Lyddon v. Shaw (1978), 56 Ill.App.3d 815, 14 Ill.Dec. 489, 372 N.E.2d 685.) For example, the Berlin court was "not convinced by [the] argument that since the defendant attorneys are officers of the court and can be disciplined by the court, they should be held liable in tort for breach of * * * the Code of Professional Responsibility * * *." Berlin, 64 Ill.App.3d at 953, 21 Ill.Dec. at 691, 381 N.E.2d at 1376.
Similarly, in Suppressed, the plaintiff client brought a legal malpractice claim alleging that coerced sexual relations between the attorney and client created a potential conflict of interest. (Suppressed, 206 Ill.App.3d at 924, 565 N.E.2d at 105.) The court rejected this claim, stating that while "defendant's behavior may have been unethical, we do not think that it equates to legal malpractice." (Suppressed, 206 Ill. App.3d at 925, 151 Ill.Dec. at 834, 565 N.E.2d at 105.) The Suppressed court continued:
"We do not disagree with plaintiff's suggestion that there should be a separate cause of action for a lawyer's breach *1137 of the ethical duty to conduct himself in accordance with the rules of professional responsibility. However, we feel that it should be left to the legislature to address this matter." Suppressed, 206 Ill. App.3d at 926, 151 Ill.Dec. at 835, 565 N.E.2d at 106.
Plaintiffs attempt to distinguish Berlin and Lyddon, noting that both involved attempts by physicians to ward off medical malpractice suits by claiming the suits were negligently filed; the claims were denied as an attempt to circumvent the requirements of a malicious prosecution action. Furthermore, because such claims were lodged against opposing counsel, an attorney-client relationship was not shown in either case. Suppressed, however, was not an attempt to circumvent the requirements of a malicious prosecution claim. Moreover, Suppressed involved a claim against the client's own attorney.
We note that the Suppressed court implied that the complaint failed to allege a duty arising out of the attorney-client relationship. (See Suppressed, 206 Ill.App.3d at 923, 151 Ill.Dec. at 834, 565 N.E.2d at 105.) A tort based solely on a breach of ethical rules, however, would not (in theory) require an attorney-client relationship. (Cf. 134 Ill.2d R. 3.3 (conduct before a tribunal), 3.4 (fairness to opposing party and counsel), 4.4 (respect for rights of third persons).) Moreover, the conclusion that breach of an ethical duty is not a claim distinct from legal malpractice is supported not only by Lyddon, Berlin and Suppressed, but also by case law in other jurisdictions. See Annot., 28 A.L.R.3d 389, 393 (1969) (and cases cited therein).
Mae relies primarily on Rogers v. Robson, Masters, Ryan, Brumund & Belom (1979), 74 Ill.App.3d 467, 30 Ill.Dec. 320, 392 N.E.2d 1365, aff'd (1980), 81 Ill.2d 201, 40 Ill.Dec. 816, 407 N.E.2d 47, to support her claim. Rogers involved a conflict of interests between an insurer and an insured represented by the same law firm. The firm argued that its duties to the insured were based on the language of the insurance policy instead of an attorney-client relationship. This court disagreed, stating that:
"the principle to be gleaned is that the attorney does represent the insured and assumes all of the duties imposed by the attorney-client relationship. Not only does the attorney owe his client fidelity and loyalty, but also is required to exercise reasonable skill in the performance of his duties." (Rogers, 74 Ill.App.3d at 474, 30 Ill.Dec. at 327, 392 N.E.2d at 1372.)
The Rogers court also stated that:
"Some of the duties of an attorney to the insured originate with the basic principle embodied in Canon 5 of the Code of Professional Responsibility * * * which provides:
`A LAWYER SHOULD EXERCISE INDEPENDENT PROFESSIONAL JUDGMENT ON BEHALF OF A CLIENT.'
While it has been held in a disciplinary proceeding that the Code of Professional Responsibility is not binding on the court, the same decision recognizes that the Canons of Ethics contained in the Code constitute a safe guide for professional conduct and an attorney may be disciplined for not observing them. (In re Taylor (1977), 66 Ill.2d 567 [6 Ill.Dec. 898], 363 N.E.2d 845.) It is true that the present action is one for malpractice and not a disciplinary proceeding, but it would be anomalous indeed to hold that professional standards of ethics are not relevant considerations in a tort action, but are in a disciplinary proceeding. Both malpractice actions and disciplinary proceedings involve conduct failing to adhere to certain minimum standards and we reject any suggestion that ethical standards are not relevant considerations in each." (Rogers, 74 Ill.App.3d at 472-73, 30 Ill.Dec. at 326, 392 N.E.2d at 1371.)
Rogers was affirmed on appeal. (Rogers v. Robson, Masters, Ryan, Brumund & Belom (1980), 81 Ill.2d 201, 40 Ill.Dec. 816, 407 N.E.2d 47.) We cannot help but note that our supreme court's opinion in Rogers makes no reference to Canon 5 or any other rule of legal ethics.
*1138 Viewed in its entirety, Rogers does not support Mae's argument. A lawyer's duty to a client may "originate in the basic principle embodied in Canon 5" (Rogers, 74 Ill.App.3d at 472, 30 Ill.Dec. at 326, 392 N.E.2d at 1371 (emphasis added)) without originating from Canon 5 itself. Indeed, in Rogers, this court characterized the duties as "imposed by the attorney-client relationship." (Rogers, 74 Ill.App.3d at 474, 30 Ill.Dec. at 327, 392 N.E.2d at 1372.) Mae has not cited any authority expressly permitting "ethical malpractice" as a distinct cause of action; as noted above, the weight of authority in this jurisdiction and others suggests the contrary. Thus, while rules of legal ethics may be relevant to the standard of care in a legal malpractice suit (Rogers, 74 Ill.App.3d at 473, 30 Ill.Dec. at 326, 392 N.E.2d at 1371; cf. Barth v. Reagan (1990), 139 Ill.2d 399, 410, 151 Ill.Dec. 534, 539, 564 N.E.2d 1196, 1201 (conflict of interest concerns may be subject of expert testimony in legal malpractice case)), they are not an independent font of tort liability.
Mae also notes on appeal that count II specifically alleges that defendants breached Rule 5-101(a) (107 Ill.2d R. 5-101(a)), which prohibited attorneys from representing clients where the attorney's independent judgment might be affected by the attorney's own financial interest, unless the client consented after full disclosure. However, the record indicates that Mae's arguments in the trial court were based on the alleged conflict of interest arising from the multiple representation, not from defendants' financial interests. Thus, the argument is waived. See Inland Real Estate Corp. v. Christoph (1981), 107 Ill. App.3d 183, 63 Ill.Dec. 9, 437 N.E.2d 658.
In sum, as the record in this case indicates that both counts I and II are based on the same factual allegations, the trial court's dismissal of count II as surplusage was not error.

II.
Plaintiffs next challenge the dismissal of count III, which alleges legal malpractice based on defendants' failure to raise illegality as a defense. Plaintiffs contend that a regulation promulgated by the Federal Trade Regulation ("FTC") regarding the sale of franchises (see 16 C.F.R. § 436.1 (1979)) made the franchise agreement upon which the CAC litigation was founded illegal. Defendants counter that the regulation, promulgated in 1979, does not invalidate the franchise agreement, which was signed in 1971. The trial court held that retroactive application of the FTC regulation would be unconstitutional.
Generally, our courts will not decide a constitutional issue if the case can be decided otherwise. (People v. Rogers (1989), 133 Ill.2d 1, 139 Ill.Dec. 714, 549 N.E.2d 226.) We turn first, therefore, to examine whether the dismissal is supportable on other grounds.
Illegality may bar the enforcement of a contract (e.g., Purcell and Wardrope Chartered v. Hertz Corp. (1988), 175 Ill.App.3d 1069, 125 Ill.Dec. 585, 530 N.E.2d 994), but the law upon which the party asserting illegality seeks to rely must have been in existence when the contract was formed. (Davies v. Arthur Murray, Inc. (1970), 124 Ill.App.2d 141, 156, 260 N.E.2d 240, 248.) This rule is related to the rule that a law may not be applied retroactively without an express provision to that effect. (See Mulligan v. Joliet Regional Port District (1988), 123 Ill.2d 303, 321, 123 Ill.Dec. 489, 498, 527 N.E.2d 1264, 1273.) Retroactivity may be attacked in a section 2-619 motion. See Hill v. Butler (1982), 107 Ill.App.3d 721, 63 Ill. Dec. 385, 437 N.E.2d 1307.
The FTC regulation plaintiffs raise was promulgated long after they signed the franchise agreement. Plaintiffs cite no authority which supports their assertion that the validity of the illegality defense is measured from the date enforcement of the contract is sought. Thus, plaintiffs have failed to show that the trial court erred in dismissing count III of the complaint.

III.
Finally, plaintiffs argue that the trial court erred in dismissing count IV of their complaint, which alleges that defendants *1139 negligently failed to raise the defense of unconscionability in the CAC litigation until after the close of proofs. Defendants respond that: (1) the initial decision not to assert unconscionability as a defense was, at worst, a mere error of judgment; and (2) the defense was raised and rejected by the trial and appellate court in the CAC litigation.
Defendants' latter contention sounds in collateral estoppel and estoppel by verdict, which can be raised by a section 2-619 motion in a legal malpractice action. (Todd v. Katz (1989), 187 Ill.App.3d 670, 674, 135 Ill.Dec. 498, 500, 543 N.E.2d 1066, 1068.) These doctrines apply when a party participates in two separate cases where different causes of action are alleged and a controlling fact or question material to the outcome of both causes has been decided against that party in the prior suit. (Housing Authority v. YMCA of Ottawa (1984), 101 Ill.2d 246, 252, 78 Ill.Dec. 125, 128, 461 N.E.2d 959, 962.) The parties need not be identical in both cases, but the party against whom estoppel is asserted must have been able to litigate the issue. Todd, 187 Ill.App.3d at 674, 135 Ill.Dec. at 500, 543 N.E.2d at 1068.
In this case, plaintiffs were parties to the prior CAC litigation, in which the current defendants raised the unconscionability defense on plaintiffs' behalf. The defense was rejected by the trial and appellate court. The record shows that the trial court rejected the defense largely on the basis of plaintiffs' admissions in court. Therefore, count IV of plaintiffs' complaint is barred by collateral estoppel. Moreover, even if it would be inequitable in a given legal malpractice claim to allow an attorney to rely on an unfavorable judgment he or she allegedly caused, plaintiffs in this case have not alleged any specific facts to support the conclusory allegation that the result of the CAC litigation would have been different if the defense had been asserted earlier. (Compare with Albright v. Seyfarth, Fairweater, Shaw & Geraldson (1988), 176 Ill.App.3d 921, 927-28, 126 Ill. Dec. 321, 325-26, 531 N.E.2d 948, 952-53 (specific allegations of causation).) Hence, plaintiffs have failed to show the trial court erred in dismissing count IV of their complaint.
For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.
Affirmed.
BUCKLEY and O'CONNOR, JJ., concur.
NOTES
[1] See Comprehensive Accounting Corp. v. Victor P. Nagy, Inc. (1987), 163 Ill.App.3d 1159, 124 Ill.Dec. 386, 529 N.E.2d 103 (Unpublished order under Supreme Court Rule 23).