(No. 53757

HOBART R. JOINER *et al.,* Appellant, v. ALFRED R. JANSSEN *et al.,* Appellees.

*Opinion filed March 18, 1981.—Rehearing denied June 4, 1981.*

John C. Hedrich, of Princeton, for appellants.

Louis E. Olivero, of Peru, for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiffs, Hobart and Catherine Joiner, brought suit to quiet title to a strip of land 14 feet wide adjacent to the east line of their residential lot in the village of Tiskilwa, claiming title by adverse possession under the 20-year statute of limitations (Ill. Rev. Stat. 1977, ch. 83, par. 1).

The rough diagram appearing below will assist in an understanding of the facts.

The portion of the east 14 feet of lot 206 claimed by the plaintiffs is marked with horizontal lines. The driveway which circles the defendants' house on lot 11 is marked with dotted lines.

The defendants, Alfred and Blanche Janssen, who live on lot 11 adjoining plaintiffs on the north, claim title to the 14-foot strip under a warranty deed. The north and south driveway serving defendants' property is located principally on an 11-foot strip of land adjoining the 14-foot strip on the east. The driveway does, however, gradually veer over on the 14-foot strip as it nears the north lot line, and the west fork of the driveway actually crosses the northeastern corner of plaintiffs' lot. The disputed property is that which lies in the 14-foot strip and west of a line of trees and bushes forming both the western boundary of the driveway and the eastern boundary of that portion of the 14-foot strip claimed by plaintiffs. Following a bench trial in the circuit court of Bureau County the plaintiffs were found to have established title by adverse possession. The judgment divided the 14-foot strip between the plaintiffs and defendants according to a survey which approximated plaintiffs' claimed boundary line. The Appellate Court for the Third District reversed, one judge dissenting (84 Ill. App. 3d 462), the majority stating that it was bound by a decision of the Second District, with the logic of which it expressed some "uneasiness" (84 Ill. App. 3d 462, 465). The essence of that majority holding is that, because the strip of land in question was excluded in the legal description in plaintiffs' purchase contract and deed, plaintiffs were on notice that they did not have title to the land. Consequently, according to that holding, plaintiffs' possession could not be hostile in the sense necessary to establish adverse possession. We granted plaintiffs' petition for leave to appeal, and we now reverse.

The trial judge indicated that he found the plaintiffs and the witnesses on their behalf more credible, and our

review of the record indicates his findings of fact are not against the manifest weight of the evidence. As our diagram indicates, three adjoining lots, 205, 206 and 207, are bordered by Main Street on the south. Lot 11 adjoins lots 206 and 207 on the north. Defendants obtained title to lot 11 and the east 14 feet of lot 206 in 1945 and have since resided in their home on lot 11. The west 11 feet of lot 207 over which defendants' driveway actually passes was never conveyed by the common grantor of all the lots in question. Quitclaim deeds to that 11-foot strip were obtained by defendants from surviving heirs of the common grantor, who died in the 1930's, and defendants now hold title to that 11-foot strip. The driveway from lot 11 was supposed to have been on the 14-foot strip of lot 206 rather than the 11-foot strip of lot 207, and thus all parties mistakenly considered the tree and bush line on the 14-foot strip as the boundary.

Plaintiffs purchased on contract in 1951 the east part of lot 205 and all of lot 206 except the east 14 feet and have since resided thereon. Plaintiffs' house is on lots 205 and 206 west of the 14-foot strip in question. In 1958 they paid the balance of the contract and obtained a deed to the property. At the time of their purchase plaintiffs were taken by the seller onto the lot, and it was then indicated to them that the east boundary was the tree and bush line adjoining the driveway. Plaintiffs believed this line to be the actual boundary, and went into possession of the property to that line. They did not erect a fence, but the evidence indicates that this tree and bush line formed a definitely ascertainable boundary. Plaintiffs mowed the grass on the 14-foot strip in question, raked leaves, planted and removed trees, bushes and flowers, gave away trees, bushes and flowers from the land as gifts, buried their pet dog on the strip when it died, shoveled snow from the walk in front of the strip, and generally maintained the property, thus indicating to neighbors and

members of the community that they were in possession of and claiming ownership to the ground west of the line of trees and bushes.

Defendants seem to have acquiesced in this line as the boundary until 1977, when a survey made at their request revealed the mistake. Defendants thereafter claimed the land pursuant to their deed and attempted to go into possession by removing rocks and bushes, from the tree and bush line. Plaintiffs then filed this action and obtained an injunction restraining defendants from entering the property west of the tree and bush line.

Although the trial court was satisfied that plaintiffs had established an adverse possessory title, the appellate court reversed because it regarded as dispositive and binding upon it the Second District Appellate Court panel's opinion in *Hansen v. National Bank* (1978), 59 Ill. App. 3d 877. The *Hansen* court indicated that where the disputed land is specifically excluded from the legal description the possessor is put on notice that he does not own the excluded land and therefore his subsequent possession of it cannot be adverse to the true owner, stating, "When an adverse claimant comes into possession of land thinking that he is not the record title holder, such possession lacks the requisite hostility for obtaining title by adverse possession." (59 Ill. App. 3d 877, 879.) The quoted statement which the appellate panel in this case deemed binding and dispositive is simply not an accurate statement of the law, as is evident from the opinions of this court hereinafter cited.

The essence of the doctrine of adverse possession is the holding of the land adversely to the true titleholder. "A party, claiming title by adverse possession, always claims in derogation of the right of the real owner. He admits that the legal title is in another. He rests his claim not upon a title in himself, as the true owner, but upon holding adversely to the true owner for the period prescribed by the

Statute of Limitations." (*Mercer v. Wayman* (1956), 9 Ill. 2d 441, 445-46; *White v. Harris* (1903), 206 Ill. 584, 592; 3 Am. Jur. 2d *Adverse Possession* sec. 7, at 87 (1962).) To hold that because the possessor knows or should know that record title is in another precludes any possibility of the possessor's title being adverse is the antithesis of the doctrine of adverse possession as it has existed in this State. (*Illinois Central R.R. Co. v. Houghton* (1888), 126 Ill. 233.) The possessor's good faith in claiming title is, of course, required by the statutory provisions relating to possession for seven years under color of title (Ill. Rev. Stat. 1977, ch. 83, pars. 6, 7); it is not relevant under the 20-year doctrine (Ill. Rev. Stat. 1977, ch. 83, par. 1).

What is essential in order to establish title under the 20-year adverse-possession doctrine incorporated in section 1 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 1) is that there must be 20 years' concurrent existence of the five elements: (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious, and exclusive possession of the premises, (5) under claim of title inconsistent with that of the true owner. (*Cannella v. Doran* (1961), 21 Ill. 2d 514, *Cagle v. Valter* (1960), 20 Ill. 2d 589; *Mercer.*) Presumptions are in favor of the title owner, and the burden of proof upon the adverse possessor requires that each element be proved by clear and unequivocal evidence. (*Walter v. Jones* (1958), 15 Ill. 2d 220; *Schwartz v. Piper* (1954), 4 Ill. 2d 488.) The incidents of that possession determine its character. The "hostile" nature of the possession does not imply actual ill will, but only the assertion of ownership incompatible with that of the true owner and all others. (*Hunsley v. Valter* (1958), 12 Ill. 2d 608.) "Where there has been an actual, visible and exclusive possession for twenty years it is not essential to the bar of the Statute of Limitations that there should have been any muniment of title or any oral declaration of claim of title, but it is

sufficient if the proof shows that the party in possession has acted so as to clearly indicate that he did claim title, 'No mere words could more satisfactorily assert that the defendant claimed title than its continued exercise of acts of ownership over the property for a period of twenty years does. Using and controlling property as owner is the ordinary mode of asserting claim of title, and, indeed, is the only proof of which a claim of title to a very large proportion of property is susceptible.' [Citations.] *** Such improvements or acts of dominion over the land as will indicate to persons residing in the immediate neighborhood who has the exclusive management and control of the land are sufficient to constitute possession. [Citations.] " *Augustus v. Lydig* (1933), 353 Ill. 215, 221-22; see also *Hunsley v. Valter* (1958), 12 Ill. 2d 608, 614.

Since the claim to ownership need not be spoken or supported by title documents, and one's actions can adequately convey the intent to claim title adversely to all the world including the titleholder (*Walter v. Jones* (1958), 15 Ill. 2d 220), it is apparent that what the property description in a deed held by the adverse possessor excludes or includes is irrelevant to the adverse-possession issues. *Schwartz v. Piper* (1955), 4 Ill. 2d 488, 493.

As we earlier noted, the possession forming the claimed ownership in the present case was based upon the mistaken belief of the parties that the boundary was the tree and bush line. In these circumstances some jurisdictions have applied a subjective test, holding that the intention of the possessor is the controlling factor in determining whether possession to a mistaken boundary is hostile. Thus, if a landowner through mistake or ignorance takes possession to a boundary beyond the true line intending only to claim to the true line and not intending to claim the additional land if it should be ascertained that the boundary is not as he thought it, then such possession is not adverse or hostile. (Annot., 80 A.L.R.2d 1171, 1174

(1961).) Elsewhere, including Illinois, occupancy to a visible and ascertained boundary for the statutory period is deemed the controlling feature in determining hostility in mistaken-boundary cases. (*Walter v. Jones* (1958), 15 Ill. 2d 220; *Cassidy v. Lenahan* (1920), 294 Ill. 503; *Hellman v. Roe* (1916), 275 Ill. 158; *Rich v. Naffziger* (1911), 248 Ill. 455; *Daily v. Boudreau* (1907), 231 Ill. 228; *Krause v. Nolte* (1905), 217 Ill. 298; *Hubbard v. Stearns* (1877), 86 Ill. 35; Annot. 80 A.L.R.2d 1171, 1183 (1961).) The difficulty with the subjective test is that it affords no protection to the landowner who innocently and mistakenly occupies and improves land beyond his boundaries. He can never acquire title thereto. Conversely, he who deliberately sets out to steal adjacent land may succeed. Consequently, "[i]n a growing number of jurisdictions occupancy to a visible and ascertained boundary for the statutory period is deemed the controlling feature in determining hostility in mistaken boundary-line cases. Thus, it is held with increasing frequency that an open, notorious, and hostile possession of property for the statutory limitation period is sufficient for the acquisition of title by adverse possession, and the fact that the possession was taken under mistake or ignorance as to boundary lines is immaterial." 3 Am. Jur. 2d *Adverse Possession* sec. 39, at 125-26 (1962).

In a case where an adverse possessor is claiming to a mistaken or disputed boundary he bears the burden of establishing by clear and convincing proof the location of the boundary. (*McLeod v. Lambdin* (1961), 22 Ill. 2d 232.) "The proof must be such as to establish with reasonable certainty the location of the boundaries of the tract to which the five elements of adverse possession are applied and all of the elements must extend to the tract so claimed. While it is not necessary that the land should be enclosed by a fence, the boundaries must be susceptible of specific and definite location." (*Schwartz v. Piper*

(1954), 4 Ill. 2d 488, 493.) Plaintiffs here have proved the existence of their claimed boundary line, supporting the survey by testimony and documentary evidence. Defendants argue that plaintiffs have not met the 20-year test since plaintiffs' deed to their property was not recorded until 1958 and they brought suit in 1977. As we have noted, however, possession is the important feature in adverse possession, not the date of a deed or other muniment of title. It is clear that the plaintiffs went into possession of their property, including the strip west of the tree and bush line, in 1951, when they acquired equitable title under the contract of purchase.

For the reasons stated, the judgment of the appellate court is reversed and the judgment of the circuit court affirmed.

*Appellate court reversed;*
*circuit court affirmed.*