RONALD TAPLEY *et al.*, Plaintiffs-Appellees, v. ROY PETERSON *et al.*, Defendants-Appellants.

Fifth District   No. 5—85—0122

Opinion filed February 27, 1986.

402

WELCH, J., dissenting.

Sterling & Stanley, P.C., of Fairview Heights, for appellants.

Bernard J. Ysursa, of Sprague, Sprague & Ysursa, of Belleville, for appellees.

JUSTICE HARRISON delivered the opinion of the court:
Plaintiffs, Ronald and Dana Tapley, filed suit to quiet title to a parcel of land adjacent to their home. Following a bench trial, the circuit court of St. Clair County ruled that plaintiffs had established title by adverse possession to a portion of the disputed parcel bounded by their driveway. Defendants, Roy Peterson and Roy Peterson Construction Company, Inc., owners of record of the land in question, appeal on the grounds that the circuit court's judgment is contrary to

the manifest weight of the evidence. Because we find this contention to be without merit, we affirm.

■■ The legal standards applicable to this case are not in dispute. To establish title to land under the 20-year adverse possession doctrine incorporated in section 13—101 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—101), a party must prove that his or her possession of that land was: (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious and exclusive, and (5) under claim of title inconsistent with that of the true owner, for a period of 20 years. (*Joiner v. Janssen* (1981), 85 Ill. 2d 74, 81, 421 N.E.2d 170, 174.) All five of these elements must be shown to have existed concurrently for the full 20-year period before the doctrine will apply. 85 Ill. 2d 74, 81, 421 N.E.2d 170, 174.

■ ■ That a party may take possession of land under mistake or ignorance as to the true boundary lines is immaterial. (*Martin v. My Farm, Inc.* (1983), 111 Ill. App. 3d 1097, 1102, 445 N.E.2d 44, 48.) The "hostility" required by the doctrine does not imply actual ill will, but merely the assertion of ownership incompatible with that of the true owner and all others. (111 Ill. App. 3d 1097, 1103, 445 N.E.2d 44, 48.) What the property description in a deed held by a party may include or exclude is likewise immaterial. (*Joiner v. Janssen* (1981), 85 Ill. 2d 74, 82, 421 N.E.2d 170, 174.) Indeed, no title documents are even required to support a party's claim of ownership. In Illinois, actions alone can adequately convey the intent to claim title adversely to all the world, including the titleholder. (85 Ill. 2d 74, 82, 421 N.E.2d 170, 174.) As our supreme court has held:

> " 'Using and controlling property as owner is the ordinary mode of asserting claim of title, and, indeed, is the only proof of which a claim of title to a very large proportion of property is susceptible.' [Citations.] *** Such improvements or acts of dominion over the land as will indicate to persons residing in the immediate neighborhood who has the exclusive management and control of the land are sufficient to constitute possession. [Citations.]" 85 Ill. 2d 74, 82, 421 N.E.2d 170, 174.

■■ ■ Although no deed is necessary to support ownership under the doctrine, where there is no deed or color of title a party has the added burden of establishing the location of the boundaries to which he claims. (*Schwartz v. Piper* (1955), 4 Ill. 2d 488, 493, 122 N.E.2d 535.) Such boundaries must be definitely established at the inception, during the continuance and at the completion of the period of adverse possession. (4 Ill. 2d 488, 493, 122 N.E.2d 535.) In other words, a party must prove with reasonable certainty the location of the bound-

aries of the tract to which he seeks to apply the five elements of adverse possession, and all of the elements must extend to the tract so claimed throughout the statutory period. (4 Ill. 2d 488, 493, 122 N.E.2d 535.) While it is not necessary that the land be enclosed by a fence, the boundaries must be susceptible of specific and definite location. 4 Ill. 2d 488, 493, 122 N.E.2d 535.

■■ ■ The doctrine of adverse possession is to be taken strictly. It cannot be made out by implication or inference. (*Cagle v. Valter* (1960), 20 Ill. 2d 589, 592, 170 N.E.2d 593.) All presumptions are in favor of the owner of title, and to overcome such presumptions the adverse possessor has the burden of proving each of the five elements by strict, clear and unequivocal evidence. (*Martin v. My Farm, Inc.* (1983), 111 Ill. App. 3d 1097, 1103, 445 N.E.2d 44, 48; *Cagle v. Valter* (1960), 20 Ill. 2d 589, 592, 170 N.E.2d 593.) Where the trial court has found that a plaintiff has established the necessary elements, however, the trial court's finding will not be reversed unless defendants are able to show that those findings are against the manifest weight of the evidence. *Brosie v. Borrowman* (1975), 29 Ill. App. 3d 936, 938, 332 N.E.2d 129, 130.

The evidence in this case showed that plaintiffs own a lot, containing a house and detached garage, in Cahokia. The front of the lot faces Water Street; the rear abuts a large block of property, known as Outlot A, owned by defendants. Plaintiffs' lot is one of eight similar lots situated between Water Street and Outlot A, all of which are shaped as parallelograms. Outlot A is basically shaped as a parallelogram as well, but includes two strips of land, each approximately 50 feet wide, which extend from the main body of the property to Water Street. One of those strips is located between lots two and three; the other between lots six and seven. Plaintiffs own lot three. The strip of land extending between lots two and three to Water Street is directly adjacent to plaintiffs' property.

Defendants purchased Outlot A, including the two 50-foot-wide strips of land described above, from Dimitrious James and are the present titleholders. James had owned the property for approximately 30 years before selling it to defendants in the spring of 1984. James operated a drive-in movie theater on the main body of Outlot A, which originally opened for business on February 7, 1964. During or after completion of the drive-in, James erected a stockade fence along the perimeter of Outlot A behind the eight lots which front Water Street, including plaintiffs' lot three. That fence, approximately six feet high, also separated the main body of Outlot A from the two 50-foot-wide strips of land between lots two and three and lots six and

seven. These two strips of land were left vacant by James and were not used by him in connection with the drive-in or for any other purpose. By the time defendants purchased Outlot A, the stockade fence was in disrepair. They replaced it with a cyclone fence and installed a gate at the point where the fence crossed the strip of land between lots two and three. Defendant Roy Peterson testified that the purpose of the gate was to permit ingress and egress to the main body of Outlot A by utility company trucks. The record shows, however, that there were multiple other points of access to Outlot A, and there was no indication that the gate was ever actually used by defendants or the utility companies providing service to them.

Plaintiffs purchased lot three from Donald and Shirley Nowak in May of 1984. The Nowaks had owned the property for approximately 29 years. The detached garage, located in the rear corner of the lot, was built by the Nowaks. The Nowaks also built a driveway leading to that garage from the front of the property on Water Street. Originally constructed of gravel, the driveway was later paved with asphalt. It extended along the northern side of the property, which was the area adjacent to the strip of land between lots two and three ultimately owned by defendants.

From the time the driveway was constructed until December of 1984, when this action was filed, the Nowaks, then the plaintiffs, held continuous possession of the land occupied by the driveway. There is no question that this possession was "actual"; the driveway was actively used throughout the period in question. Nor is there any question that this possession was "open, notorious and exclusive." Use of the land over which the driveway passed was readily visible to anyone who might be interested, including the titleholders. Until December of 1984, such use was limited to the Nowaks, then the plaintiffs, or others acting with their consent and permission. (See *Light v. Steward* (1984), 128 Ill. App. 3d 587, 594, 470 N.E.2d 1180, 1184.) The right of the Nowaks, then plaintiffs, to use this land did not depend upon a like right in others. (*Schmidt v. Brown* (1907), 226 Ill. 590, 599, 80 N.E. 1071.) The Nowaks, then the plaintiffs, actually used and maintained the entire strip of land adjacent to lot three. The Nowaks never believed that they were the owners of the entire property, but always claimed ownership of that area occupied by their driveway, and acted accordingly. Both the Nowaks and the plaintiffs believed that this area, with the possible exception of a small corner of the driveway, was part of lot three. Defendants do not dispute that the Nowaks and the plaintiffs therefore possessed the driveway area "under claim of title." Their ownership of this area was never challenged

by James, the defendants or anyone else prior to December of 1984.

In fact, the Nowaks and the plaintiffs were mistaken as to the true boundaries of lot three. A survey conducted by defendants disclosed that the plaintiffs' driveway actually encroaches upon the 50-foot strip of land adjacent to lot three to which defendants presently hold title. The encroachment consists of a triangular segment of the driveway which extends some 15 feet onto defendants' land at its widest point, where it abuts Water Street. It is this triangular segment which the trial court found to have been acquired by plaintiffs through adverse possession.

■ Defendants assert that the trial court's finding must be reversed because plaintiffs failed to show by strict, clear and unequivocal evidence that the disputed area was possessed adversely for the required 20-year period. We disagree. Testimony by Mrs. Nowak indicated that the driveway was constructed when the garage was built. Mrs. Nowak recalled that the drive-in provided speakers for the homeowners who lived next to the theater and that a speaker was installed in their yard after their detached garage was built. Although she could not remember the precise date the garage was finished, she stated that it was completed "when the drive-in was completed." Dimitrious James, owner of the drive-in, testified that construction of the theater began in 1963 and that the theater opened on February 7, 1964. James' testimony is not disputed. Taken together, the testimony of James and Mrs. Nowak thus establishes that the land occupied by the driveway was first possessed adversely by early 1964. This suit was not filed until December 4, 1984, more than 20 years later.

■ Defendants point out that portions of Mrs. Nowak's testimony were rebutted by certain exhibits; for example, a basketball goal was shown to have been set up on the strip of land next to lot three at a time other than that recalled by Mrs. Nowak. In addition, defendants argue that Mrs. Nowak's recollection concerning construction of the garage and driveway was contradicted by her husband, a witness for defendants, who thought that they might not have been built until a year or so after opening of the drive-in. These inconsistencies do not, however, mandate reversal. A ruling by the trial court is not against the manifest weight of the evidence merely because the record might support a contrary decision. (*Graham v. Mimms* (1982), 111 Ill. App. 3d 751, 767, 444 N.E.2d 549, 560.) Where, as here, there is contradictory testimony, the trial judge, as trier of fact, is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence. (*In re Estate of Deskins* (1984), 128 Ill. App. 3d 942, 951, 471 N.E.2d

1018, 1025.) In this case, the trial court made detailed findings of fact, including the following:

"7. The Court has closely considered the content of the testimony by Mr. and Mrs. Nowak and their demeanor on the stand. The Court finds that the testimony of Mrs. Nowak was sufficiently convincing to meet the burden of proof required by an adverse possession case, and that the testimony of Mr. Nowak did not sufficiently rebut her testimony to deny plaintiffs' claim."

Having carefully reviewed the entire record, we find no justification for substituting our judgment for that of the trial court.

Defendants next assert that plaintiffs failed to adequately establish the location of the boundary line to which they claim, because the dimensions of the driveway, which sets that boundary, changed over time. Again we disagree. Mr. Nowak testified that the original gravel driveway was 10 or 11 feet wide, or "something in that vicinity." This, however, was an estimate. He made no measurements. At the time of trial, the driveway, now asphalted, was approximately 12 feet wide, extending 15 feet onto defendants' property at its widest point. There was no evidence that the driveway was widened when the asphalt was laid. Accordingly, the trial court could reasonably have concluded that the driveway dimensions remained unchanged for the 20-year period, and that Nowak's initial estimate was simply corrected by the actual measurements made when defendants conducted their survey. Under these circumstances, as the trial court found, the location of the boundary to which plaintiffs' claim extends is sufficiently demarcated and established by the northern edge of that driveway as it now exists.

Finally, defendants contend that plaintiffs' possession of the disputed land was actually permissive, and not hostile or adverse. There is no doubt that where possession of land is permissive and consistent with the title of the true owner, it will not be adverse so as to start the running of the statutory limitations period. (*Walter v. Jones* (1958), 15 Ill. 2d 220, 225, 154 N.E.2d 265.) This, however, is not such a case. Mr. Nowak testified that he used the strip of land next to lot three to display lawnmowers which he sold as part of a business operated from his home. An employee of Mr. James' drive-in once informed Nowak that the mowers were on James' property, but told him not to worry about it and that he need not pay rent. Nowak believed, and plaintiffs do not dispute, that use of this portion of the land was therefore merely permissive. Defendants reason from this the use of the entire strip of land was likewise permissive. Their con-

tention is untenable. The evidence shows unequivocally that Nowak displayed his mowers only in the area north of the driveway and that the driveway itself was never mentioned during his discussion with James' employee. As previously noted, ownership of the driveway area by the Nowaks, then plaintiffs, was in fact never challenged by James, defendants or any other party before December of 1984. Throughout the period at issue, the conduct of the Nowaks, then plaintiffs, with respect to the area bounded by the driveway was flatly inconsistent with any possible claim of permissive use. Indeed, we are unable to perceive what more could have been done by the Nowaks or the plaintiffs to show their intention to exercise dominion over it.

For the foregoing reasons, we find that the judgment of the circuit court of St. Clair County is amply supported by the evidence. The judgment is therefore affirmed.

Affirmed.

JONES, J., concurs.

JUSTICE WELCH, dissenting:
I respectfully dissent. I would hold that plaintiffs did not prove their 20-year possession of the disputed triangle by "clear and unequivocal evidence." *Martin v. My Farm, Inc.* (1983), 111 Ill. App. 3d 1097, 1103, 445 N.E.2d 44, 48.

The critical question of fact at trial was when the Nowaks began to "possess" the disputed area by beginning construction of their driveway. Mr. James apparent deposition testimony that work on the drive-in theater began in 1963 and that the drive-in theater opened for business on February 7, 1964, is uncontradicted (no transcript of James' deposition appears of record). Plaintiff rely on Mrs. Nowak's testimony, which the trial court expressly found more convincing than Mr. Nowak's. The crucial colloquy during her direct examination was as follows:

"Q. In relation to when the drive-in was built or finished, can you tell us when the garage was built?

A. Right at about the same time to the best of my recollection.

Q. Would you say that the garage was there before the fence was put up?

A. Before the drive-in fence was put up?

Q. Yes, the drive-in fence, excuse me.

A. I think so.

Q. Now, when the garage was put up, was the driveway constructed at the same time?

A. Yes.

* * *

Q. Mrs. Nowak, did this drive-in movie provide speakers for the neighbors?

A. Yes, they did.

Q. Did they put those speakers in when they were building the drive-in?

A. Yes.

Q. Where is the speaker located on your property?

A. It is located—let's see. At the back of the lot near really close to the garage.

Q. Do you know if this speaker was placed in after your garage was there?

A. I would think it would have had to have been."

Her cross-examination included the following:

"Q. As you sit here today, Mrs. Nowak, do you know for sure when that garage was constructed?

A. I can't tell you positively, no. In my best recollection it was there when the drive-in was completed but that is recollection."

Our supreme court has stated that where a party claims title to land by adverse possession, "[t]he burden of proof is demanding, and the evidence must be unequivocal." (*Beard v. Henn* (1963), 28 Ill. 2d 11, 15, 190 N.E.2d 345, 347.) Presumptions are in favor of the title owner. (*Joiner v. Janssen* (1981), 85 Ill. 2d 74, 81, 421 N.E.2d 170, 174.) I find Mrs. Nowak's testimony equivocal at best regarding the time of the Nowaks' construction of the driveway. Granted, it is for the trial court to decide which witness to believe in a bench trial. However, I do not believe that the trier of fact may form an unequivocal conclusion based on evidence which is equivocal at best. Therefore, I would reverse the judgment of the circuit court with respect to the adverse possession issue, and remand for decision of the remaining issues in the case.