LINDA S. COBB *et al.*, Plaintiffs-Appellees, v. THOMAS E. NAGELE, Defendant-Appellant.

Third District No. 3—92—0456

Opinion filed April 7, 1993.

Jay P. Winkelmann, of Winkelmann Law Offices, of Urbana, for appellant.

Petersen, Deck, Ruch & Baron, of Kankakee (Charles E. Ruch, Jr., of counsel), for appellees.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiffs, Linda Cobb, Anita Royko, Chris Yana, Scott Yana, James Yana, and Karen Yana, filed a complaint to quiet title to a disputed 11½-foot wide strip of land. The complaint alleged that the plaintiffs had acquired the property from the defendant, Thomas Nagele, by adverse possession. Following a hearing, the circuit court entered a final judgment order finding that the plaintiffs had acquired title to the property by adverse possession. The defendant appeals and we affirm.

On appeal, the defendant asks us to consider the following issues: (1) whether the trial court erred in ruling that the plaintiffs met their burden of proof in establishing the elements of adverse possession; (2) whether the trial court erred in denying the defendant's motion to amend his answer; and (3) whether the trial court erred in ruling that the plaintiffs' complaint properly described the property in question.

On December 4, 1990, the plaintiffs filed a complaint to quiet title against the defendant. The complaint alleged that plaintiffs James and Karen Yana are purchasing property described as the northwest quarter (NW 1/4) of the southeast quarter (SE 1/4) of section 13, township 26 north, range 11 west of the second principal meridian, Iroquois County, from the other named plaintiffs. The complaint further alleged that the defendant owned real estate described as the southwest quarter (SW 1/4) of the southeast quarter (SE 1/4) of section 13, township 26 north, range 11 west of the second principal meridian, Iroquois County. The complaint alleged that a fence was built along the south line of the plaintiffs' property and the north line of the defendant's property in 1946. The plaintiffs alleged that from 1946 until the present, they and their predecessors in interest have continuously, hostilely, openly, and notoriously possessed the land up to the fence. Further, the plaintiffs alleged that they did so under a claim of right. The plaintiffs asked the court to declare that they had acquired an 11½-foot strip on the north side of the fence by adverse possession.

The following testimony was adduced at trial. Wilbur Yana testified first. Yana testified that his parents acquired the property described in the plaintiffs' complaint in 1943. Yana stated that when his parents acquired the property there was a post and wire fence separating their property from that of the defendant. In 1946 the fence was in need of repair and Yana's father and Art Nagele participated in rebuilding the fence in the same location. Yana testified that his father always planted crops up to the fence or as close as

possible by mechanical means. Yana's father farmed the land up to the fence each year from 1943 until 1962, when he became ill. Subsequently, Yana's brother Ernest began farming the land. Ernest helped his father farm the land in 1962 and then also farmed it from 1963 until 1984. Yana testified that Ernest, like his father, always farmed all the way up to the fence. Ernest's son, James Yana, began farming the land in 1984.

James Yana testified that he has been a farmer since 1977. James testified that he helped his father farm the land beginning in 1977, and in 1984 he took over the farming himself. James testified that his father always farmed up to the fence. James further testified that from 1977 to 1987 no one except for himself and his father ever went on to the property north of the fence. James testified that he first actually observed the defendant on his property in 1988, but that in 1987 the defendant had entered on to the 11½-foot strip north of the fence and destroyed the crops planted there. In 1988, the defendant again entered on to the 11½-foot strip and destroyed the crops. The defendant continued this behavior each year through 1991. James further testified that when he bought the property he believed that he owned all the way to the fence.

The defendant testified that he did begin going on to the disputed strip of land in 1987, but that he was mowing weeds rather than crops. The defendant stated that he may have knocked down corn, but that if it was on his property it constituted a weed. The defendant never planted crops north of the fence. The defendant stated that he built the fence with the help of his father and brother and that none of the Yanas helped. The defendant claimed that the fence was built south of the boundary on purpose. The defendant had a survey of the property done in 1982. That survey apparently indicated that the disputed strip of land was on the defendant's property. The defendant claimed that he already knew that he had land on the north side of the fence, even before the survey was done.

The circuit court ruled in a memorandum opinion that the plaintiffs had acquired title to the disputed property by adverse possession. The court found that the plaintiffs had met their burden of showing that the use had been continuous, notorious and adverse since 1943. The court further found that it was clear that the parties had treated the fence as the boundary between their property.

Following the issuance of the memorandum opinion, the defendant filed a motion for leave to file an amended answer. The defendant sought to add to his answer a claim that he had title to the

property by virtue of his paying taxes on the property since 1982 under color of title. The claim was based on section 13—109 of the Code of Civil Procedure (the Code) (735 ILCS 5/13—109 (West 1992)).

The court entered a final judgment order on May 27, 1992, declaring the plaintiffs to be the owners of the disputed strip of land. The court incorporated by reference its previous memorandum opinion. Further, the court denied the defendant's motion to amend the answer. This appeal followed.

The defendant first argues on appeal that the court incorrectly ruled that the plaintiffs met their burden of proving the requirements of adverse possession. We disagree. In *Joiner v. Janssen* (1981), 85 Ill. 2d 74, 421 N.E.2d 170, the supreme court listed the requirements necessary to establish title under the 20-year adverse possession doctrine incorporated in section 13—101 of the Code (735 ILCS 5/13—101 (West 1992)):

> "[T]here must be 20 years' concurrent existence of the five elements: (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious, and exclusive possession of the premises, (5) under claim of title inconsistent with that of the true owner." (*Joiner*, 85 Ill. 2d at 81, 421 Ill. 2d at 174.)

The presumptions are in favor of the titleholder opposing adverse possession, and the burden of proof on the adverse possessor requires that each element be proved by clear and convincing evidence. (*Beverly Trust Co. v. Denowski* (1991), 216 Ill. App. 3d 732, 576 N.E.2d 1049.) Where the trial court has found that a plaintiff has established the necessary elements of adverse possession, the trial court's finding will not be reversed unless the defendant is able to show that those findings are against the manifest weight of the evidence. *Tapley v. Peterson* (1986), 141 Ill. App. 3d 401, 489 N.E.2d 1170.

■ Our review of the record indicates that the plaintiffs proved each element by clear and convincing evidence. Further, the defendant has utterly failed to show that the trial court's findings were against the manifest weight of the evidence. The fact that the plaintiffs farmed the land up to the fence satisfies the requirements of open, notorious, and actual possession of the premises. The testimony of the defendant that he did not mow down the plaintiffs' crops (or weeds, as he referred to them) until 1987 indicates that the plaintiffs were in exclusive possession from 1943 until 1987.

The defendant argues that the plaintiffs did not sufficiently prove continuity. The defendant claims that neither of the plaintiffs'

witnesses actually farmed or lived on the property for the requisite number of years. Regardless, the circuit court found that the unrebutted testimony of the plaintiffs was sufficient to show that they, or members of their family, had possessed the property for each of the years in question. We agree with the circuit court. The testimony of Wilbur and James Yana clearly established that the plaintiffs had farmed the disputed land from 1943 until 1987.

Further, the fact that the plaintiffs planted crops on the disputed strip of land dispenses with the requirements of hostility and claim of title inconsistent with that of the owner. The supreme court in *Joiner* explained that, in determining adverse possession, "hostility" does not mean ill will but rather the assertion of ownership incompatible with that of the true owner. (*Joiner*, 85 Ill. 2d at 81, 421 N.E.2d at 174.) The supreme court further explained that the claim of title or assertion of ownership need not be verbal, but that it is sufficient that the party in possession acted as to indicate that he claimed title:

> " 'No mere words could more satisfactorily assert that the defendant claimed title than its continued exercise of acts of ownership over the property for a period of twenty years does. Using and controlling property as owner is the ordinary mode of asserting claim of title, and, indeed, is the only proof of which a claim of title to a very large proportion of property is susceptible.' " (*Joiner*, 85 Ill. 2d at 82, 421 N.E.2d at 174, quoting *James v. Indianapolis & St. Louis R.R. Co.* (1879), 91 Ill. 554, 557.)

The acts of dominion asserted over the property by the plaintiffs in this case were sufficient to show that they claimed the property hostilely and under a claim of right.

The defendant argues that the plaintiffs failed to prove adverse possession because their use was permissive, and permissive use can never ripen into a prescriptive right. (See *Burrows v. Dintlemann* (1976), 41 Ill. App. 3d 83, 353 N.E.2d 708.) Our review of the record indicates that there was no evidence on which the circuit court could have found the plaintiffs' use to be permissive. The defendant argues that at trial he indicated that he had always viewed the plaintiffs' use as permissive. We have been unable to locate in the record where the defendant made this assertion. The defendant did testify that, even before the 1982 survey, he knew that he had more land beyond the fence. Considering the record as a whole, we find this testimony unworthy of belief. The defendant did not explain why, if he always knew that he had more land, he

did not give the plaintiffs notice until 1982 and why he did not attempt possession until 1987. The circuit court correctly determined that the plaintiffs met their burden of proving title by adverse possession.

■ The defendant next argues that the circuit court erred in not allowing him to amend his answer. After the trial, but before the final judgment order was entered, the defendant sought to amend his answer in an attempt to use section 13—109 of the Code as an affirmative defense. The defendant sought to claim that the disputed property was still his because he paid taxes on the property under color of title for seven years. However, section 13—109 only applies to parties who pay taxes under color of title for seven years and are in *actual possession* of the property. The defendant did not attempt actual possession until 1987 and therefore could not have been in possession for the requisite seven years. The circuit court properly denied the defendant's motion to amend his answer.

■ The defendant's last argument is that the plaintiffs' complaint did not set out a case for adverse possession. The defendant argues that the plaintiffs' complaint does not allege in which quarter the property claimed to be adversely possessed was located. Nevertheless, the complaint alleged which property was owned by the plaintiffs and the defendant, explained that a fence divided the property, and explained that they were claiming property on the north side of the fence. We find that the plaintiffs sufficiently described the property they were claiming. The defendant's argument on this point is without merit.

For the reasons stated, the judgment of the circuit court of Iroquois County is affirmed.

Affirmed.

BARRY and BRESLIN, JJ., concur.