**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200235-U

Order filed June 28, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| J. CRAIG ARBOGAST and MISCHELE ARBOGAST, as Trustees of the Craig and Mischele Arbogast Family Trust, | ) ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0235 |
| | ) | Circuit No. 19-MR-56 |
| DOUGLAS J. SCHAUB, | ) ) | |
| Defendant-Appellant, | ) ) | |
| | ) | Honorable |
| (The Marilee Porter Revocable Trust, Defendant). | ) ) | Mark E. Gilles, Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Daugherity and Wright concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's (1) finding of adverse possession was not against the manifest weight of the evidence, (2) finding of trespass was not erroneous as a matter of law, and (3) award of $1000 in nominal damages for the trespass was not excessive.

¶ 2    The plaintiffs, J. Craig Arbogast and Mischele Arbogast, as Trustees of the Craig and

Mischele Arbogast Family Trust, brought a complaint for adverse possession, prescriptive

easement, and trespass against the defendant, Douglas J. Schaub. The circuit court found in favor

of the Arbogasts on their adverse possession and trespass claims. Schaub appeals.

¶ 3                                    I. BACKGROUND



¶ 4          In August 1985, the Arbogasts purchased real estate in rural Brimfield, Illinois (hereinafter

the Arbogast Property). At that time, the Arbogast Property was bordered on the west and south

by land owned by Robert and Marilee Porter, whose property consisted of 25 acres of farmland to

---

¹ This image is provided by the Peoria County Property Tax website. The website provides a disclaimer that it is a tool for county employees and the general public use and data provided therein is as is without warranty of accuracy, timeliness, or completeness. The website is intended to be used as informational only. We use this information only to better illustrate the location of the property in this case. Schaub's property at issue is bolded and outlined in red (identified with Parcel Identification Number (PIN) 1101400021). This image was obtained by entering Schaub's PIN into the search tool. See Peoria County Property Tax, https://gis.peoriacounty.org/peoriagis/ (last visited June 23, 2021). We clarify that the map appears to show the Arbogasts' detached garage as having a separate driveway than the half-oval gravel driveway to the west of the Arbogasts' home. However, evidence of record shows that it is one continuous gravel driveway stretching across the strip, thereby connecting the detached garage to the home. Additionally, the gravel driveway's two points of access are directly connected to Windish Road.

the south of the Arbogast Property and a 468' x 30' strip that ran along the entire western boundary of the Arbogast Property. To the west of the strip lies a road owned by Michael Windish (referred to as Windish Road). Windish Road was created in 1977 when Roy Windish purchased the land upon which it lies from the Porters. The deed from the Porters to Roy Windish included a perpetual easement allowing the use of Windish Road for ingress and egress in favor of owners of lots in the area. When the Arbogasts purchased their property, a gravel driveway resembling the shape of a half oval existed on the strip, which provided them access to Windish Road then to Route 8.

¶ 5        In September 1995, the Arbogasts and Marilee Porter, as widow and successor to Robert Porter, signed a two-part agreement. The first part provided the Arbogasts with an easement to use a "portion" of the strip for the purpose of maintaining, repairing, or replacing the existing well and waterline running from the strip to the Arbogasts' home. The second part of the agreement provided Marilee Porter with a relocated easement as her existing easement on the northern part of the Arbogast Property was set to be extinguished by the widening of Route 8.

¶ 6        In March 2003, Marilee Porter deeded a remainder interest in her property to her son, Dennis Porter, and reserved herself a life estate. In June 2016, Dennis Porter conveyed his remainder interest to Schaub. Beginning in September 2018, Schaub plowed the strip and dumped piles of dirt on the gravel driveway the Arbogasts use to access Windish Road.

¶ 7        In January 2019, the Arbogasts filed a complaint against Schaub.[2] Count I set forth a claim for adverse possession, alleging that they continuously, exclusively, and openly and apparently possessed the strip adversely to the title holder of record (Marilee Porter) since August of 1985. Count II set forth a claim for a prescriptive easement in that they continuously, exclusively, and

_____

[2] The Arbogasts also brought this action against the Marilee Porter Revocable Trust, but later voluntarily dismissed the trust when Marilee Porter conveyed her life estate to Schaub in May 2019.

openly and apparently used the entire length of the strip as a means of ingress and egress to their property by regularly driving their vehicles across it at various points since August 1985, which was without permission and adverse to Marilee Porter. Count III alleged trespass, describing the incidents when Schaub accessed the strip and took action to prevent them from using it.

¶ 8    In February 2019, the Arbogasts filed a petition for a preliminary injunction. In addition to the facts set forth in their complaint, they added that Schaub had repeatedly made complaints to local law enforcement agencies alleging trespass, which resulted in the filing of criminal complaints against them. In March 2019, the court granted the preliminary injunction to enjoin Schaub from any further interference with the Arbogasts use and possession of the strip.

¶ 9    In December 2019, the court held a bench trial. The following testimony was adduced. Michael Windish testified that his brother leased Windish Road in 1977 and he often helped his brother farm the area. In the 1990s, he did not frequent Windish Road as often, but once he owned it in 1998, he used it regularly except in the wintertime. After the Arbogasts purchased their home, he observed them mow and park on the strip. Windish also testified that he farmed land for Marilee Porter since 1999, never mowed the strip for her, and never saw her use any portion of the strip for any purpose. He noted that he had observed Schaub mow the strip.

¶ 10    Mischele Arbogast testified that she has lived on the Arbogast Property continuously since Labor Day weekend in 1985. Since the Arbogasts moved in, they have mowed the grass on the strip, fertilized it, weeded it, edged it, and trimmed it. She understood that Marilee Porter owned the strip, never maintained it, and never used it for any purpose during the entire time the Arbogasts lived there. In addition to maintenance, the Arbogasts used the strip to store and park a truck and trailer, guest parking, and for children to play. While the Arbogasts' children were growing up, they used the strip as the home's front yard as the home faced west. She stated that these activities

4

took place for anyone in the neighborhood to see and that they were never told by Marilee Porter or anyone acting on her behalf to stop using the strip. She described that these activities on strip extended across the entire area of the strip. Mischele also stated that she had a detached garage built in 2008, which opens to the west toward Windish Lane and cannot be used effectively without the ability to use the strip. The gravel driveway on the strip is used to access the garage.

¶ 11 Mischele testified that, before Schaub purchased the strip, he would snowplow the gravel driveway on the strip out to Windish Lane as a favor, but he did not snowplow the gravel driveway after he owned the strip. She stated that, after Schaub purchased the strip in 2016, he would mow over the top of her husband Craig's mowing and Craig would also mow over the top of Schaub's mowing. Schaub did not object to their use of the strip until 2018 when he plowed up the strip, dropped a dirt pile on the gravel driveway that led to the garage, and called the police several times. She recalled that the sheriff came out about six or seven times in response to Schaub's calls. Mischele paid $75 to have the dirt pile removed, $135 for added rock on the driveway to avoid getting stuck in the mud, and $80 to have the rock spread. It took the Arbogasts a day of work to repair the area themselves. They also spent $6618.25 in attorney fees to defend the criminal trespass charges. Mischele described that, since the injunction was granted, Schaub would take pictures of the area and stop his vehicle in front of the house and sit. This made Mischele feel intimidated and uncomfortable, which caused her to lock all the doors to the house.

¶ 12 Schaub testified that he purchased the strip in 2016. He maintained it by mowing grass, plowing snow, and supplying gravel. He knew that the Arbogasts were using the gravel driveway on the strip and did not have any objections at that time. Schaub stated that the Arbogasts offered to buy the strip, and they only mowed the strip because they promised Marilee Porter that they would. Schaub stated that he observed the Arbogasts mowing the property but that he mowed it

5

too. In 2018, he believed that the Arbogasts were not respecting the property and there were "three DUI's and some other criminal stuff" so he had the land surveyed. Schaub provided that if adverse possession was granted, he would be landlocked and no longer have legal access to Windish Road.

¶ 13    Craig Arbogast testified as a rebuttal witness and stated that he never (1) told Schaub that he promised Marliee Porter that he would cut the grass on the strip, (2) spoke to Marilee Porter about the strip, and (3) offered to buy the strip from Schaub. He stated that he knew the strip was owned by Marliee Porter and Schaub subsequently purchased it.

¶ 14    The court found in favor of the Arbogasts as to their adverse possession and trespass claims and awarded them $1000 in nominal damages for the trespass. Schaub filed a motion to reconsider, and, in the alternative, a motion for a new trial. Among other things, he argued that the court failed to set the dates of adverse possession, the Arbogasts failed to prove that their possession was exclusive and adverse (*i.e.*, the cross-easement agreement), the award of damages was not supported by the evidence, and the court failed to address Schaub's now landlocked property. The court denied the motion, stating (1) adverse possession was established by September 3, 2005; (2) the evidence was uncontroverted that the Arbogasts' use of the strip was without permission; (3) it considered all the evidence before it; (4) nominal damages were appropriate as actual damages were not proved; and (5) Schaub's property was not left landlocked. Schaub appeals.

¶ 15                                II. ANALYSIS

¶ 16    On appeal, Schaub argues (1) the circuit court's finding of adverse possession was against the manifest weight of the evidence, (2) the court erred as a matter of law when it determined that he trespassed on the strip for which he simultaneously possessed color of title at the time of the alleged trespass, and (3) the award of $1000 for nominal damages was excessive.

¶ 17                            A. Adverse Possession

6

¶ 18    To succeed on a claim for adverse possession, the claimant must establish possession of the property for the entire 20-year statutory period that was: (1) continuous; (2) hostile or adverse; (3) actual; (4) open, notorious, and exclusive; and (5) under a claim of title inconsistent with that of the true owner. *Township of Jubilee v. State*, 405 Ill. App. 3d 489, 498 (2010). All presumptions are in favor of the title owner and the claimant must prove each element by clear and unequivocal evidence. *Knauf v. Ryan*, 338 Ill. App. 3d 265, 269 (2003); *Dotson v. Former Shareholders of Abraham Lincoln Land & Cattle Co.*, 332 Ill. App. 3d 846, 855 (2002) (the "clear and unequivocal evidence" standard has not been explained by the supreme court; thus, courts apply the clear and convincing standard in adverse possession cases).

¶ 19    A circuit court's finding of adverse possession will not be reversed unless it is against the manifest weight of the evidence. *Cobb v. Nagele*, 242 Ill. App. 3d 975, 978 (1993). A finding is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the court's findings are unreasonable, arbitrary, or not based on the evidence. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). We give deference to the circuit court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses. *Id.* Therefore, we will not substitute our judgment for that of the circuit court regarding the credibility of the witnesses, the weight to be given to the evidence, or inferences to be drawn. *Id.* at 350-51. Schaub argues that the court's judgment is against the manifest weight of the evidence because the Arbogasts failed to establish the elements required to satisfy a claim for adverse possession.[3]

¶ 20                          1. *Continuous Possession*

---

[3] Schaub's post-trial motion only challenged the elements pertaining to exclusivity and hostility/adversity. *Supra* ¶ 14. We address his arguments that extend beyond the scope of his post-trial motion because, in cases appealed following a civil bench trial, "[n]either the filing of nor the failure to file a post judgment motion limits the scope of review." Ill. S. Ct. R. 366(b)(3)(ii) (eff. Feb. 1, 1994). Therefore, Schaub's failure to include these issues in his post-judgment motion does not preclude him from raising the issues on appeal. *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 12.

¶ 21    Schaub argues that the activities of mowing, fertilizing, weeding, parking, and playing on the strip are not, by definition, continuous. Notably, Schaub's argument fails to address the Arbogasts' regular use of the strip for ingress and egress to access their home and their long-term storage of a truck and trailer on the strip. We find that the Arbogasts' use of the strip was continuous. The evidence presented at trial demonstrated that the Arbogasts moved into their property Labor Day weekend in 1985 and used the strip continuously when the adverse possession period ended on September 3, 2005. There was no evidence presented that the Arbogasts' use or possession of the strip was interrupted during the 20-year period. No one other than the Arbogasts used or maintained the strip at issue and the Porters never attempted to exclude the Arbogasts, their children, or their guests from the portions of the strip that extended beyond the well easement. See *Brandhorst v. Johnson*, 2014 IL App (4th) 130923, ¶ 40. Thus, the court's finding that the Arbogasts' possession was continuous was not against the manifest weight of the evidence.

¶ 22                              2. *Hostile or Adverse Possession*

¶ 23    The hostile or adverse element is satisfied when an assertion of ownership is incompatible with any other claim of right. *In re Estate of Cargola*, 2017 IL App (1st) 151823, ¶ 19. Therefore, it must be clearly shown that the use of the land was adverse and not merely permissive. *Id.* Schaub first argues that the Arbogasts' use of the strip could not be hostile because it was permissive per the 1995 cross easement agreement entered into between the Arbogasts and Marilee Porter. However, the cross-easement agreement only permitted the Arbogasts to access a "portion" of the strip as it related to maintaining the well. The easement did not provide the Arbogasts with unfettered access to the entire strip for other purposes, such as parking, storing a trailer, egress and ingress, or a place for children to play. The Arbogasts use of the strip was hostile as they exceeded the scope of the easement with respect to boundaries and use. We note that although Schaub

8

testified that the Arbogasts promised Marilee Porter that they would mow the strip, this testimony was directly refuted, and the court was in the best position to resolve the conflicting evidence.

¶ 24 However, Schaub argues that the court's holding in *Mann v. LaSalle National Bank*, 205 Ill. App. 3d 304, 309 (1990), demonstrates that the Arbogasts' possession of the strip was not hostile. We find *Mann* inapposite. In that case, the court held that the land in question was "essentially an unenclosed vacant lot" and the claimant's use was "presumptively permissive and not adverse." *Id.* Although it has been held that possession of vacant *and* unenclosed land is presumed to be permissive and not adverse (*Morris v. Humphrey*, 146 Ill. App. 3d 612, 615 (1986)), the strip in the case at bar was not vacant as it abutted the Porters' property and contained a well and gravel driveway. See also *Light v. Steward*, 128 Ill. App. 3d 587, 596 (1984) ("the land was not vacant as evidenced by the fact that the [right-of-way] ran by the [owners'] residence").

¶ 25 Schaub also argues that the Arbogasts use of the strip was not hostile because there was no evidence of an ascertained boundary for the Arbogasts purported use of the property. See *Knauf*, 338 Ill. App. 3d at 269. Here, the strip has a clear and ascertainable boundary as it is the same length as the Arbogast Property and extends along the entire west side of the Arbogast Property. Further, the testimony demonstrated that the Arbogasts possessed the entire strip, albeit different portions for different uses, such as parking, ingress, egress, children playing, storing vehicles, and maintaining the landscape and driveway. See *Brandhorst*, 2014 IL App (4th) 130923, ¶¶ 62-64. Thus, the court's finding of hostility was not against the manifest weight of the evidence.

¶ 26                                 3. *Actual Possession*

¶ 27 Schaub argues that mowing, trimming, and occasionally occupying vacant land is not sufficient to constitute actual possession. "The making of improvements or acts of dominion over land, indicating to persons residing in the immediate neighborhood who has exclusive management

9

and control of the land, are sufficient to constitute possession." *Ewald v. Horenberger*, 37 Ill. App. 3d 348, 351 (1976). Here, the Arbogasts possessed the strip as if they were the true owners. They mowed the grass on the strip, fertilized it, weeded it, edged it, trimmed it, parked vehicles and trailers on it, used it for egress and ingress, and their children played on it. Similarly, in *Brandhorst*, the court found that mowing the lawn, weeding, raking leaves, shoveling snow, and the claimant's children playing on the land demonstrated actual possession. *Brandhorst*, 2014 IL App (4th) 130923, ¶ 54; see *Township of Jubilee*, 405 Ill. App. 3d at 498 (the mere mowing of grass alone is generally insufficient to support a finding of adverse possession). Further, adverse claimants need not erect a fence or other structures on the land in question to prove actual possession. *Brandhorst*, 2014 IL App (4th) 130923, ¶ 54. The evidence overwhelmingly demonstrated that the Arbogasts exercised management, maintenance, and control over the strip during the 20-year period, and the court's finding of actual possession was not against the manifest weight of the evidence.

¶ 28                     4. *Open, Notorious, & Exclusive Use*

¶ 29        The adverse claimant's use of the land must be of open and visible character to apprise the world that the land has been appropriated and is occupied. *Estate of Welliver v. Alberts*, 278 Ill. App. 3d 1028, 1038 (1996). Regarding exclusivity, the adverse claimant must possess the property independent of a like right in others and the rightful owner must be deprived of possession. *Brandhorst*, 2014 IL App (4th) 130923, ¶ 57 (the adverse claimant only needs to demonstrate that the alleged rightful owner never possessed the land during the adverse possession period).

¶ 30        Schaub argues that there was no evidence regarding how the community could have been apprised of the Arbogasts' purported possession and exclusive use and enjoyment of the entire strip. We disagree. The evidence demonstrated that the Arbogasts controlled and maintained the strip during the statutory period as if they were the true owners. Further, the unrebutted evidence

10

demonstrated that, during the 20-year period, the Porters never maintained or possessed the strip. Windish even testified that he observed the Arbogasts maintain and occupy the strip during the relevant period. Thus, the Arbogasts' maintenance of the strip indicated to the community that they were in possession of and claiming ownership. See *Joiner v. Janssen*, 85 Ill. 2d 74, 82 (1981).

¶ 31 Nonetheless, Schaub also argues that he possessed and maintained the strip since his purchase in 2016 by mowing the grass, plowing the snow, and maintaining the gravel portions. The Arbogasts argue that this fact is irrelevant because they satisfied the prescriptive period for adverse possession on September 3, 2005. The Arbogasts rely on law pertaining to prescriptive easements providing that "[p]rescriptive easements are not *created* by judicial edict; a legal judgment merely *establishes* that a prescriptive easement exists or not." (Emphasis in original.) *Chicago Title Land Trust Co. v. JS II, LLC*, 2012 IL App (1st) 063420, ¶ 81. We find that the same procedure applies here.

¶ 32 When adverse possession is established, the adverse claimant is accorded title to the land and the previous titleholder is divested of title. *Continental Illinois National Bank & Trust Co. of Chicago v. Wilson*, 103 Ill. App. 3d 357, 361 (1982). The adverse possessor obtains title that can only be divested by the conveyance of the land to another or by a subsequent disseisin for the statutory period. *Knauf*, 338 Ill. App. 3d at 271. No deed is required to support ownership acquired by adverse possession. *Tapley v. Peterson*, 141 Ill. App. 3d 401, 404 (1986). The adverse possessor's mere possession bars the owner of recovery, and no deed is required to continue the bar. *Augustus v. Lydig*, 353 Ill. 215, 222 (1933). Stated another way, the running of the statute of limitations, along with the presence of the requisite elements, not only bars the owner but also vests title created by operation of law in the adverse possessor. Therefore, the Arbogasts obtained ownership of the strip by adverse possession by operation of law before Schaub purchased it. The

11

case at bar is a formality in the form of a legal judgment establishing whether the elements required for adverse possession were satisfied.

¶ 33 Thus, the court's finding that the Arbogasts' possession was open, notorious, and exclusive was not against the manifest weight of the evidence.

¶ 34 *5. Claim of Title Inconsistent With That of the True Owner*

¶ 35 Last, Schaub argues that the Arbogasts made no permanent changes, never believed they owned the strip, and used the strip with permission. As already mentioned, the Arbogasts were not required to make permanent changes to the strip and did not use the strip with permission. Also, there is no requirement that the Arbogasts needed to believe that they actually owned the strip. The evidence shows that the Arbogasts used and controlled the strip as if it were their own. "Using and controlling property as owner is the ordinary mode of asserting a claim of title inconsistent with that of the true owner." *Peters v. Greenmount Cemetery Association*, 259 Ill. App. 3d 566, 570 (1994). Thus, the court's finding that the Arbogasts possessed the strip under a claim of title inconsistent with that of the true owner was not against the manifest weight of the evidence.

¶ 36 For the foregoing reasons, the court's findings that the Arbogasts obtained fee simple ownership of the strip by adverse possession was not against the manifest weight of the evidence.[4]

¶ 37 B. Trespass

¶ 38 "A trespass is an invasion in the exclusive possession and physical condition of land." *Millers Mutual Insurance Association of Illinois v. Graham Oil Co.*, 282 Ill. App. 3d 129, 139 (1996). In Illinois, a person may be liable in trespass for negligently or intentionally causing a

---

[4] In Schaub's opening brief, he argued that the court failed to address whether the finding of adverse possession left his remaining property landlocked. Upon the filing of supplemental transcripts, the record demonstrates that, during the hearing on his post-trial motion, the court found that Schaub's remaining property was not landlocked. Schaub has since formally withdrawn this argument in his reply brief.

12

thing or a third person to enter the land of another. *Id.*

¶ 39    Schaub argues that the court erred when it found him liable for trespassing the strip because, at the time of the purported intrusion, he had color of title. Thus, he did not "enter the land of another." *Id.* Schaub notes that he obtained title to the strip in 2016 by warranty deed, the purported trespass occurred in 2017 to 2018, and the Arbogasts' title by adverse possession was not adjudicated until 2020. We first note that Schaub only had a remainder interest subject to Marilee's life estate at the time of the trespass in this case. He did not acquire a present possessory interest until the life estate was transferred to him during this litigation. Also, we have already decided that the finding of adverse possession period running from September 3, 1985, to September 3, 2005, was not against the manifest weight of the evidence. The Arbogasts were not required to own the strip in deed to bar Schaub in trespass. See *Augustus*, 353 Ill. at 222. Thus, an action brought by an adverse claimant for trespass against a record titleholder is a viable cause of action. See *Applebey v. Lenschow*, 144 Ill. App. 3d 208, 215-16 (1986) (likewise a record titleholder cannot recover from a party found to have adversely possessed the disputed land).

¶ 40    Despite this, Schaub contends that an immediate transfer of title upon the expiration of the statutory period for adverse possession defies logic and reasoning as no notice would be required to the record titleholder and it allows the property to be transferred with no real estate taxes ever being paid by the claimant. Schaub's position ignores the purpose of the adverse possession elements. The law of adverse possession requires the adverse claimant to possess the land in a way that provides notice. For instance, the statutory period is lengthy at 20 years and requires the claimant to possess the land in a specific manner: continuously, adversely, actually, openly, notoriously, exclusively, and with an assertion of title over the true owner. These onerous elements were construed to provide the notice that Schaub complains does not exist. The record titleholder's

13

continued payment of property taxes has no bearing on this analysis, and Schaub fails to cite authority providing otherwise. As stated aptly by Oliver Wendell Holmes, "if a man neglects to enforce his rights, he cannot complain if, after a while, the law follows his example."

¶ 41                                      C. Nominal Damages

¶ 42          "[N]ominal damages are a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he is entitled to compensatory damages." *In re Estate of Hoellen*, 367 Ill. App. 3d 240, 252 n.3 (2006). Schaub argues that the award of $1000 in nominal damages was excessive. He provides that nominal damages in such cases is typically only $100, citing only *Metropolitan Water Reclamation District of Greater Chicago v. Terra Foundation for American Art*, 2014 IL App (1st) 130307, ¶ 85. However, we fail to see how this case supports his argument. In that case, the court held that $100 in nominal damages for trespass was not against the manifest weight of the evidence. *Id.* It included no discussion on how or why it decided this amount was sufficient. Schaub otherwise fails to develop or further support his argument. Where an issue is merely included in a vague allegation of error, it is not argued, and it will not satisfy the requirements of the Supreme Court rule requiring argument and citation to relevant authority. *Lake County Grading Co., LLC v. Village of Antioch*, 2014 IL 115805, ¶ 36; Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016). Therefore, Schaub has forfeited this argument. Even if we excuse his forfeiture, we fail to see how the $1000 award in nominal damages was excessive based on the facts and circumstances before us.

¶ 43          For the foregoing reasons, we affirm the circuit court's judgment.

¶ 44                                      III. CONCLUSION

¶ 45          The judgment of the circuit court of Peoria County is affirmed.

¶ 46          Affirmed.

14